UNITED STATES *v.* EVANS.

No. 15.   Argued February 3, 1948.—Decided March 15, 1948.

*David Reich* argued the cause for the United States. With him on the brief were *George T. Washington,* then Acting Solicitor General, *Assistant Attorney General Caudle, Robert S. Erdahl* and *Philip R. Monahan.*

*David Ginsburg* argued the cause and filed a brief for appellee.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

Section 8 of the Immigration Act of 1917 provides:

"That any person . . . who shall bring into or land in the United States . . . [or shall attempt to do so]

or shall conceal or harbor, or attempt to conceal or harbor, or assist or abet another to conceal or harbor in any place . . . any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States under the terms of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding $2,000 and by imprisonment for a term not exceeding five years, *for each and every alien so landed or brought in or attempted to be landed or brought in."* (Emphasis added.)   39 Stat. 880, 8 U. S. C. § 144.

Appellee and another were indicted for concealing and harboring five named aliens in alleged violation of § 8. Before trial appellee moved that the indictment be dismissed on the ground that it did not charge a punishable offense.   He argued that although the statute provided for two different crimes, one landing or bringing in unauthorized aliens, and the other concealing or harboring such aliens, punishment was prescribed in terms only for the former crime.   The District Court accepted this argument and granted the motion to dismiss.   The Government appealed directly to this Court pursuant to the Criminal Appeals Act, 28 U. S. C. § 345, and we noted probable jurisdiction.

The case presents an unusual and a difficult problem in statutory construction.   It concerns not so much Congress' intention to make concealing or harboring criminal as it does the penalty to be applied to those offenses including attempts.   The choice, as might appear on glancing at the statute, is not simply between no penalty, at the one extreme, and, at the other, fine plus imprisonment up to the specified maxima for each alien concealed or harbored.   The problem is rather one of multiple choice, presenting at least three, and perhaps four, possible yet

inconsistent answers on the statute's wording. Furthermore, as will appear, the legislative history is neither clear nor greatly helpful in ascertaining which of the possibilities calling for punishment was the one Congress contemplated.

Before discussing specifically the alternatives, we note that the Government rests primarily on the clarity with which § 8 indicates Congress' purpose to make concealing or harboring criminal, rather than upon any like indication of legislative intent concerning the penalty.[1] Because the purpose to proscribe the conduct is clear, it is said, we should not allow that purpose to fail because of ambiguity concerning the penalty. Rather we are asked to make it effective by applying that one of the possibilities which seems most nearly to accord with the criminal proscription and the terms of the penalizing provision.

On the other hand, appellee does not really dispute that Congress meant, by inserting the amendment prohibiting concealing or harboring,[2] to make those acts criminal. But he denies that it is possible, either from the section's wording or from the legislative history, to ascertain with any fair degree of assurance which one of the possible penal consequences Congress may have had in mind. From this he falls back upon the conclusion indicated by the premise, namely, that the task of resolving the difficulty goes beyond dispelling ambiguity in the usual sense

[1] Since the issues arise on dismissal of the indictment which charges both concealing and harboring, as well as attempt to conceal and harbor, we are not asked to determine whether "conceal or harbor" as used in § 8 specifies only one offense or two distinct ones or, if the latter, the difference between the two. Cf. notes 7 and 8 *infra* and text.

[2] Section 8 as enacted originally in 1907, 34 Stat. 900, covered only bringing in or landing and attempts to bring in or land. The prohibition of concealing or harboring and of attempting to conceal or harbor was added by amendment in 1917. 39 Stat. 880.

of judicially construing statutes [3] and, if attempted, would require this Court to invade the legislative function and, in effect, fix the penalty. The argument is therefore not merely that a rule of strict construction should be applied in petitioner's favor. It is rather that the choice the Government asks us to make is so broad and so deep, resting among such equally tenable though inconsistent possibilities, that we have no business to make it at all.

Even in criminal matters a strong case would be required to bring about the result appellee seeks. For, where Congress has exhibited clearly the purpose to proscribe conduct within its power to make criminal and has not altogether omitted provision for penalty, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose. This is as true of penalty provisions as it is of others. *United States v. Brown,* 333 U. S. 18.

But strong as the presumption of validity may be, there are limits beyond which we cannot go in finding what Congress has not put into so many words or in making certain what it has left undefined or too vague for reasonable assurance of its meaning. In our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions.[4] But given some legislative edict, the margin between the necessary and proper judicial function of construing stat-

---

[3] Indeed appellee asserts that the words of § 8 are unambiguously to the effect that fine and imprisonment are to be imposed "for each and every alien so landed or brought in . . . ," not "for each and every alien so concealed or harbored." This view regards the concluding "for each and every alien" clause as an integral and inseparable part of the penalty provision for all offenses punishable under the section.

[4] *United States* v. *Hudson and Goodwin,* 7 Cranch 32; *United States* v. *Britton,* 108 U. S. 199; *United States* v. *Eaton,* 144 U. S. 677; *Viereck* v. *United States,* 318 U. S. 236, 241, 243–244.

utes and that of filling gaps so large that doing so becomes essentially legislative, is necessarily one of degree.

We turn then to consider whether the Government is asking that we do too much when it puts forward a preferred reading of the penal provision, perhaps suggests another as a permissible alternative, and is prepared to accept a third, though disavowing its complete consistency with Congress' intent, if neither of the others is adopted.

The Government's preferred reading would impose the same penalty for concealing or harboring as for bringing in or landing, notwithstanding the "for each and every alien" clause is limited expressly to aliens "so landed or brought in or attempted to be landed or brought in." Under this interpretation the effect of that clause would be to provide additional punishment, as stated in the brief, "where the crime of landing or bringing in aliens *or the crime of concealing or harboring aliens* involves more than one alien brought into the country illegally." (Emphasis added.)

This construction is admittedly ungrammatical and the failure to integrate the wording of the "each and every alien" clause with the language of the 1917 amendment adding the concealing and harboring offenses is conceded to have been possibly due to oversight.

If only imperfect grammar stood in the way, the construction might be accepted. But we agree with appellee that more is involved. The Government in effect concedes that in terms the section prescribes no penalty for concealing or harboring. But it argues that inclusion of them as offenses becomes meaningless unless the penalty provision, in spite of its wording, is construed to apply to them as well as to bringing in or landing. In other words, because Congress intended to authorize punishment, but failed to do so, probably as a result of oversight, we should plug the hole in the statute.

To do this would be to go very far indeed, upon the sheer wording of the section. For it would mean in effect that we would add to the concluding clause the words which the Government's reading inserts, "and for each and every alien so concealed or harbored." It is possible that Congress may have intended this. But for more than one reason we cannot be sure of that fact.

In the first place, the section as originally enacted was limited to acts of smuggling. And there is some evidence in the legislative history that the addition of concealing or harboring was meant to be limited to those acts only when closely connected with bringing in or landing, so as to make a chain of offenses consisting of successive stages in the smuggling process.[5]

But that evidence is not conclusive.[6] And the section's wording is susceptible of much broader constructions. On the language it is possible not only to treat concealing or harboring as offenses distinct and disconnected from smuggling operations; it is also possible to regard them as separate and distinct from each other. And on the broadest possible interpretation, giving independent effect to the words "or not lawfully entitled . . . to reside within the United States,"[7] the section could be taken

---

[5] The Senate Report accompanying the 1917 amendment stated that "such new provisions as are included are merely to complete the definition of the crime of smuggling aliens into the United States and related offenses . . . ." Sen. Rep. No. 352, 64th Cong., 1st Sess. 9.

[6] There is no indication of the degree or character of the relation suggested by the words "and related offenses," see the preceding note, with reference to the proximity of the acts proscribed, in time and place, to smuggling operations.

[7] This possibility apparently is not comprehended by the indictment in this case, which substitutes "and" for the "or" given by the statutory wording in describing the aliens charged to have been concealed and harbored, *viz.*, "which said alien persons then and there were aliens not duly admitted to the United States by an

to apply to concealing or harboring of aliens lawfully admitted but unlawfully remaining within the country.

In that event an innkeeper furnishing lodging to an alien lawfully coming in but unlawfully overstaying his visa would be guilty of harboring, if he knew of the illegal remaining. And, with him, one harboring an alien known to have entered illegally at some earlier, even remote, time would incur the penalties provided for smuggling, if the Government's position giving implied extension of the penalty provision were accepted.

We do not mention these possibilities to intimate opinion concerning the reach of the statute with reference to covering them, for no such question is squarely before us. But we point them out because they are relevant to the problem of assurance or reasonable certainty in asserting that Congress by necessary implication intended to extend the penalties originally and still clearly provided for smuggling to all offenses covered by the language defining the crimes.

The very real doubt and ambiguity concerning the scope of the acts forbidden, if any, beyond those clearly and proximately connected with smuggling raise equal or greater doubt that Congress meant to encompass all those acts within the penal provisions for smuggling. If acts disconnected from that process are forbidden, the separate offenses of concealing and more particularly of har-

immigrant inspector *and* not lawfully entitled to enter or reside in the United States . . . ." (Emphasis added.)

Even if this use of the conjunctive in place of the statutory disjunctive, see text of § 8 quoted at the beginning of this opinion, would prevent applying this indictment to a case involving no illegal entry, but only illegal remaining, that fact would not prevent the drafting of other indictments to cover such cases or perhaps amending this one to give it the disjunctive effect. These possibilities are as pertinent to whether the suggested penal extension should be made as if actually presented on the indictment in its present form.

boring, if the two are distinct, might require, in any sound legislative judgment, very different penalties from those designed to prevent or discourage smuggling in its various phases. That is essentially the sort of judgment legislatures rather than courts should make.

The position the Government asks us to take involves therefore a major task in two respects, not merely one. The first is to expand the penal language beyond the explicit limitation "for each and every alien so landed or brought in," so as to apply the penalties designed for smuggling to all offenses covered by the section. The second is to do this blindly in reference to the scope and quality of the forbidden acts to which the extension is to be made, that is, without resolving beforehand the questions we have noted as arising on the face of the section in relation to its reach in defining the offenses of concealing or harboring. The Government does not ask us to undertake now to say how far the section may or may not go in these numerous aspects of defining coverage.[8] We are not willing to undertake extension of the penalty provision blindfold, without knowing in advance to what acts the penalties may be applied. Nor are we any more willing to decide wholesale among the various possibilities of coverage. That problem, squarely presented in concrete instances, might be resolved step by step, were there no difficulty over the penalty. But to resolve it broadside now for all cases the section may cover, on this indirect presentation, would be to proceed in an essentially legis-

---

[8] The indictment not only conjoins illegal remaining with illegal entry, cf. note 7, but charges that petitioner concealed and harbored aliens "not duly admitted . . . and not lawfully entitled to enter or reside . . . ." Thus, the specific charge in this case cannot be said to be limited to smuggling, for no wording of the statute relating to bringing in or landing is included. Such a limitation could be read into the indictment only by now declaring the statute to be limited as a whole to acts constituting part of the smuggling process.

lative manner for the definition and specification of the criminal acts, in order to make a judicial determination of the scope and character of the penalty.

Beyond the difficulties arising on the section's wording, the legislative history is sufficent in one respect, when added to the other obstacles, to make them insuperable for accepting the Government's preferred reading. It discloses that both before [9] and after [10] the 1917 amendment the immigration authorities and particularly the Commissioner General repeatedly sought from Congress the specific penal wording the Government now asks us

---

[9] The bills proposed by the Commissioner General would have clearly prescribed the same penalty for concealing or harboring as for landing or bringing in. The penalty provision of one draft stated that the penalty should apply "for each and every alien so landed or brought in or attempted to be landed or brought in, or so concealed or harbored, or with respect to whom there has been such an attempt to conceal or harbor, or assisting or abetting another to conceal or harbor." See Annual Report for 1909 of the Commissioner General of Immigration, 168. The simple clause "for each and every alien to whom this section is applicable" was substituted in the bill proposed in the annual report for 1910. (P. 170.) In 1911 a bill incorporating many of the Commissioner General's suggested amendments to the Act was introduced, but the penalty provisions of § 8 were not made applicable to concealing or harboring. S. 3175, 62d Cong., 2d Sess. This omission was not corrected in the subsequent drafts that eventually resulted in the 1917 statute. See H. R. 6060, 63d Cong., 2d Sess.; H. R. 10384, 64th Cong., 1st Sess.

[10] In his 1931 and 1932 annual reports the Commissioner General specifically pointed out that an amendment to § 8 was necessary because it had been interpreted to provide no penalty for the offense of concealing and harboring. A bill introduced in the House of Representatives in 1934, but not enacted, included an amendment to § 8 to make the penalty apply "for each and every alien in respect to whom any of the foregoing offenses have occurred." H. R. 9366, 73d Cong., 2d Sess. At the hearings on this bill, the Deputy Commissioner expressly pointed out that the amendment was designed "to make sure that there will be no question that we can inflict this penalty for concealing a smuggled alien." Hearings before the

to insert. These efforts were made as conflicting judicial decisions demonstrated that the courts were very much at sea [11] and their floundering was brought to congressional attention.[12] In each instance nevertheless the effort was unsuccessful.

It may well be, as the Government infers, that this only increases the mystery of Congress' failure to include explicit penalties when it added the new offenses. It is possible that Congress may have thought none were needed. But that view hardly explains satisfactorily the subsequent repeated failures to clarify the matter, after experience had shown that need. We cannot take them as importing clear direction to the courts to do what Congress itself either refused or failed on notice to do upon so many occasions and importunities.

We are not entirely sure that the Government intends to put forward as an alternative suggestion the reading,

House Committee on Immigration and Naturalization on H. R. 9366, 73d Cong., 2d Sess. 22.

In 1940 the general problem was again before Congress when it was made unlawful to stow away in order to facilitate entry into the United States or to aid or abet a stowaway, 54 Stat. 306, and again when the Act was amended to authorize the deportation of any alien who, knowingly and for gain, encouraged, induced or assisted another alien to effect an unlawful entry. 54 Stat. 671.

[11] The Circuit Court of Appeals for the First Circuit construes the section to prescribe a penalty for concealing or harboring, but not to authorize increased penalties where more than one alien is concerned, as is the case for the offense of landing or bringing in. *Medeiros* v. *Keville*, 63 F. 2d 187, see note 14 *infra*. In the Southern District of California it has been held both that no penalty is prescribed for concealing or harboring, *United States* v. *Niroku Komai*, 286 F. 450; *United States* v. *Kinzo Ichiki*, 43 F. 2d 1007, and that the same penalty is prescribed for concealing or harboring as for landing or bringing in, *United States* v. *Roberts*, unreported decision by Yankwich, J., on April 29, 1946; *United States* v. *Piamonte*, unreported decision by Weinberger, J., on May 21, 1946.

[12] See hearings before the House Committee on Immigration and Naturalization on H. R. 9366, 73d Cong., 2d Sess. 22.

already discussed, which would extend the smuggling penalties to the section's broadest possible construction in relation to definition and coverage of criminal acts, *i. e.,* to concealing or harboring of aliens lawfully admitted but unlawfully remaining. But appellee regards this as a tendered possibility and specified statements in the Government's brief appear to sustain his view.[13] Whether appellee is correct in taking the statements as suggesting an independent alternative or, on the other hand, they were made, though not accurately phrased for the purpose, in support of the Government's preferred position, is not greatly material. For, in any event, what has been said about extending the penalty to include the narrower range of forbidden acts applies to the broader one with even greater force as calling for the extension's rejection.

There is, finally, the third possible interpretation which the Government concedes not wholly consistent with the statutory purpose, but says nevertheless is clearly authorized "if a strictly grammatical construction of Section 8 is employed." This would read the "for each and every alien" clause out of the section insofar as offenses of concealing or harboring are concerned, while leaving it effective for bringing in or landing. In other words, the reading would differentiate the two classes of offenses for applying the penalty provision. The prescribed maximum penalties would be made effective for concealing or harboring, but without augmenting them according to the number of aliens concealed or harbored, even though previously landed or brought in, at the same time. That

---

[13] Illustrative is the statement, "We submit, therefore, that a proper reading of Section 8 in the light of its legislative history can leave no doubt of Congress' intention that the penal provisions should apply to the offense of concealing or harboring an alien *not duly admitted or not lawfully entitled to enter or reside within* the United States." (Emphasis added.)

increase however would continue in force for bringing in or landing.[14]

The wording of § 8 can be made to support this interpretation only by treating the "for each and every alien" clause as ambivalently separable in relation to the two classes of offenses. Nothing on the face of the section suggests such a reading. The comma preceding the final clause is not equal to the burden of supporting the construction. The clause was part of the section before the concealing and harboring offenses were added. Previously there could have been no possible intent or purpose to apply the clause to some of the offenses but not to others. The clause's function was solely to augment the penalty when more than one alien was involved. That function was not changed when the new offenses were added.[15] Neither the amendment's wording nor its history evinces any purpose to increase punishment, propor-

---

[14] This was the view taken in *Medeiros* v. *Keville*, 63 F. 2d 187, by the Circuit Court of Appeals for the First Circuit, which appears to be the only appellate decision on the matter. The Government successfully opposed the granting of certiorari in that case, although consistently with its present preferred position it now asserts that, contrary to the ruling, the congressional intent to punish concealing and harboring proportionately to the number of aliens involved is "equally as clear as the intent to make those offenses punishable at all."

In response to appellee's suggestion of inconsistency between that position and the one now taken, the Government points out that its brief in opposition also urged that the *Medeiros* decision was, in any event, correct on other grounds.

[15] Indeed it was in effect reinforced by the 1917 amendment. For that amendment not only added the new offenses but substantially increased the maxima of the authorized fine and imprisonment. Congress thus gave specific attention to the penal provision in addition to expanding the criminal acts, and in this respect followed the Commissioner General's recommendation. Yet it declined at the same time to alter the "for each and every alien" clause, which he also asked to have changed.

tionately to the number of aliens involved, for one class of offenders but not for the other. The construction, like the preferred one, is a construction of necessity, to be justified if at all only by the fact that without it the statute becomes unenforceable for the offenses of concealing or harboring.

If there were less inconsistency among the tentative possibilities put forward or greater consistency with the section's wording implicit in one, resolution of the difficulty by judicial action would involve a less wide departure from the common function of judicial interpretation of statutes than is actually required by this case. But here the task is too large. With both of the parties we agree that Congress meant to make criminal and to punish acts of concealing or harboring. But we do not know, we can only guess with too large a degree of uncertainty, which one of the several possible constructions Congress thought to apply. The uncertainty extends not only to the inconsistent penalties said to satisfy the section, either grammatically or substantively if not grammatically. It also includes within varying ranges at least possible, and we think substantial, doubt over the section's reach to bring in very different acts which conceivably might be held to be concealing or harboring. The latter ambiguity affects the former and their sum makes a task for us which at best could be only guesswork.

This is a task outside the bounds of judicial interpretation. It is better for Congress, and more in accord with its function, to revise the statute than for us to guess at the revision it would make. That task it can do with precision. We could do no more than make speculation law.

The judgment is

*Affirmed.*