## O'FERRAL v. COOLIDGE.
### No. 6469.

Court of Civil Appeals of Texas. Texarkana.
Oct. 13, 1949.

Rehearing Denied Oct. 27, 1949.

Judgment Affirmed March 8, 1950.

Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, for appellant.

Bath & Turner, Henderson, for appellee.

WILLIAMS, Justice.

Numerous claims and liens that had matured against J. O. Rogers, a defendant below, who made default, and extensive holdings of minerals and leasehold estates owned by him located in several counties in Texas, and numerous defendants and cross-plaintiffs, were involved in the trial. In the adjustment of the claims and liens and the appointment of a receiver to sell the properties, only Charles. A. O'Ferral, a defendant below, has appealed from that part of the judgment which decreed that the deed of trust lien asserted by appellee W. J. Coolidge, the plaintiff below, was a 'valid and superior lien to the 25% interest in a ⅞ leasehold estate that O'Ferral claimed as a bona fide purchaser under a prior dated unrecorded assignment of such interest. Details of the adjudication of the other claims in the trial court are immaterial to the disposition of the point presented.

Rogers executed and delivered on February 13, 1947, to the Arp State Bank his note for $22,000 which represented $15,000 then loaned to him and $7,000 the amount of a note then renewed. The property described in the deed of trust lien executed by Rogers. on the same date to the bank to better secure the payment of above note called for 46.25% interest in the ⅞ leasehold estate in the south half of the L. Ramey 213 acre survey in Montague County; and for 50% interest in the ⅞ leasehold estate in the north half of the same survey. The leasehold estate in the north half of the Ramey survey was known by and herein will be called the North Grimes lease. In November, 1947, the bank for a valuable consideration sold and conveyed above note and trust lien, evidenced by a written assignment, to Coolidge, the plaintiff below, the holder and owner of same at the time of trial.

Appellant in his pleadings and under his evidence asserted that prior to and at the time the bank acquired its trust lien, he was the owner as a bona fide purchaser from Rogers of a 25% interest in the ⅞ leasehold estate in the North Grimes lease, or one-half of the 50% interest that Rogers originally owned. This assignment out of Rogers evidencing this asserted sale is dated and acknowledged as of October 21, 1945, being filed for record on March 26, 1947, subsequent to February 13, 1947, when the bank acquired its lien.

During the negotiations prior to closing the loan, the bank required of Rogers and he furnished a financial statement. This statement in Rogers' handwriting was "in such a mess you couldn't tell anything about it,—unintelligible." The bank redrafted or recompiled this original financial statement into a form the bank used to meet the requirements of the banking department and had a secretary type the new statement. The original statement was discarded and evidently thrown into a waste basket. This typewritten financial statement, signed by Rogers, that was kept in the files of the bank and which was introduced in the trial, listed various mineral and leasehold interests and other assets owned by Rogers as of January 30, 1947. This statement shows total assets of $154,-465 and liabilities of $13,432. Rogers' interest in the two Grimes leases is listed in above financial statement to be:

"26¼% South 106.5 acres Grimes
    lease, @ $1200 per acre....... $31,000
¼ interest North 106.5 acres
    Grimes lease, 26¼ acres @ $50   1,325"

It is appellant's contention that the quoted disclosure or statement in above financial statement as recompiled by the bank from the original shows as a matter of law that the bank had notice that

Rogers only owned a 25% interest in the North Grimes lease at the time he proposed to and did give the trust lien covering a 50% interest and the court erred in holding that the bank's lien was valid as against appellant's unrecorded assignment.

In Hexter v. Pratt, Tex.Com.App., 10 S.W.2d 692, 693, cited by appellant in support of his position, it is stated, "In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. * * * So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed."

In the application of the foregoing rule of law it is also well recognized as restated in above authority that "actual notice being a question of fact, it is impossible to prescribe with accuracy just what facts or circumstances will be sufficient. Each case must be governed by its own peculiar circumstances." Actual notice is rebuttable. The burden of proof between these two claimants rested upon Coolidge to establish that the bank under whom he holds was a bona fide mortgagee. 43 Tex.Jur. 688; 29 Tex.Jur., Sec. 47, p. 851; Hood v. Webster, 271 N.Y. 57, 2 N.E.2d 43, 107 A.L.R. 497, 506.

It is indefinite whether the loan committttee saw the original or the recompiled financial statement, the banker being uncertain but of the impression that they saw the original. It is not certain when the original statement was redrafted, whether before or after the loan was closed. The South Grimes lease was then in oil production. The North Grimes lease was undeveloped and its value uncertain. It was the bank's testimony that they extended the loan mainly on the strength of the value of the South Grimes lease, and probably would have made the loan based on the South Grimes lease alone. For this reason they did not pay much attention to the financial statement and never discovered the discrepancy between the interest set out in the financial statement and that called for in the deed of trust.

When Rogers applied for the loan he represented to the bank that he owned 50% interest in the North Grimes lease. The deed of trust which Rogers prepared or caused to be prepared and which he tendered to the bank when he executed the instrument called for and described a 50% interest in the North Grimes. The attorney employed to examine the title rendered the bank an opinion on the day the loan was closed in which he advised the bank that Rogers then owned 46.25% interest in the South Grimes and 50% interest in the North Grimes lease. An engineer's report was furnished the bank which showed the oil potentials in the South Grimes lease. It is without dispute that the bank paid an adequate valuable consideration and acted in good faith in acquiring its lien, and that the bank had never heard of O'Ferral or his claim until months subsequent to the date the loan was made.

The trial court filed no findings of fact, none being requested. From the judgment rendered, it is to be implied that the trial court found from a preponderance of the evidence that the bank did not have notice of the unrecorded assignment nor was apprised of such information that required inquiry which if pursued would have disclosed that O'Ferral held such assignment prior to closing the trust lien. The above facts and circumstances when considered under the well-recognized test quoted in McCarty v. Hogan, Tex.Civ.App., 121 S. W.2d 499, 502, from 17 T.J. 909, do not support appellant's claim that the bank as a matter of law had notice of O'Ferral's unrecorded assignment. If in fact the recompiled financial statement was in the hands of the bank before the loan was closed and the bank did not discover the discrepancy, such asserted want of caution under above facts and circumstances would not as a matter of law amount to notice. 39 Am.Jur. 240, 241.

In view of above conclusions, we pretermit a discussion of the evidence offered

by appellee in his attack on the assignment with respect to alleged want of consideration, its execution and delivery dates.

During pendency of this suit, the court in June, 1948, appointed T. A. Bath receiver with authority as specified in an interlocutory order to take charge of, manage, operate, conserve and maintain the numerous properties involved pending final determination of the suit. The litigants including O'Ferral joined in the application for the appointment of a receiver and then agreed upon the appointment of Bath as such receiver. Bath then and at all times here involved as an attorney at law represented Coolidge, the plaintiff, in this litigation.

Bath qualified as receiver and as such actually and continuously served and was so acting when the final judgment on March 3, 1949, was entered. In this final judgment the court after adjudicating the various interests and liens decreed that Bath, as such receiver, sell at private sale numerous properties including the 50% interest in the North Grimes lease and the 46.25% interest in the South Grimes lease. Ten days' written notice by registered mail was required prior to date of sale. Report of the proceeds of the sales to the court was required and such proceeds to be distributed under future orders of the court. O'Ferral in open court timely objected to above order which authorized the sale by Bath, as receiver and there urged that Bath was the attorney who represented Coolidge, a a litigant, and the latter would probably be the purchaser.

That section of Art. 2294, Tex.Vernon's R.C.S., invoked by O'Ferral in his attack upon above order reads: "No party, attorney, or any person interested in any way in an action for the appointment of a receiver shall be appointed receiver therein." O'Ferral recognizes as held in James v. Roberts Telephone & Electric Co., Tex. Com.App., 206 S.W. 933, and authorities collated in 36 Tex.Jur. p. 91, that the appointment of Bath, a resident of Rusk County, Texas, as receiver was not void but voidable.

■ It is without controversy that the authority to manage and conserve the property granted to Bath was to the mutual benefit of all litigants. It was possible if not probable that a conflict might arise in the sale of the property, as urged by O'Ferral to the latter order, which authorized Bath to sell the property in that the best price Bath's client would pay would be the cheapest price but the best price for the receiver to receive would be the highest price. We will assume that the foregoing distinction is of such effect as to prevent, under appellant's original agreement, the application of waiver or estoppel against him. We are also in sympathy, as a general proposition, with appellant's position that it would be against public policy and should meet with disfavor for the courts over the timely objection urged by a litigant to appoint as receiver any person as enumerated in Art. 2294, supra, who may be interested in the action.

■ Mindful of the two views just expressed, this record presents no injury, none being asserted, under which the application of any equitable doctrine would warrant a reviewing court to disturb the acts of this receiver in the sale of the assets in the manner authorized and later confirmed by the trial court. It is not contended that Coolidge paid an inadequate price for the property or that it would bring more at another sale. Appellant does not claim that any collusion or fraud was practiced; that the receiver did not act in good faith in obtaining the best possible price; that the sale was had without written notice by registered mail to him; or that the sale was confirmed without proper notice.

The judgment is affirmed.