THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. FAIR LAWN SERVICE CENTER, INC., DEFENDANT-
APPELLANT.

Argued December 5, 1955—Decided January 16, 1956.

*Mr. George Heftler* argued the cause for the appellant (*Messrs. Platoff, Platoff & Heftler,* attorneys; *Mr. Jacob Green* on the brief).

*Mr. Ralph L. Fusco,* Deputy Attorney-General argued the cause for the respondent (*Mr. Grover C. Richman, Jr.,* attorney; *Mr. Guy W. Calissi,* Prosecutor of the Pleas, and *Mr. Jack Ballan,* Special Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal from a judgment of the Bergen County Court affirming the conviction of the defendant-appellant for a violation of *N. J. S.* 2*A* :171–1, the Sunday observance law of New Jersey.

The complaint charged a violation of this statute in that on February 13, 1955 the appellant washed an automobile of one Albert Durkovic. The defendant operated an automobile service business in Fair Lawn, New Jersey, providing for the complete servicing of automobiles, including gas, oil, greasing, repairs and automatic washing of cars. The case was tried on a stipulation of facts and the borough officials made no charge of violation with respect to the operation on Sunday of defendant's gasoline and service station, apparently on the theory it constitutes a work of necessity. See *N. J. S. 2A*:171-1.

The appellant was convicted originally in the municipal court and on appeal to the Bergen County Court after a trial *de novo* he was again found guilty and a fine of $20 was imposed under *N. J. S. 2A*:169-4, which is the penalty section applying to disorderly persons and which the County Court held applicable to this situation.

The appellant appealed from this conviction and we certified the cause here on our own motion. *R. R.* 1:10-1(*a*).

On this appeal the appellant raised several constitutional questions and this court required that notice be given to the Attorney-General pursuant to *R. R.* 4:37-2. The Attorney-General appeared and argued the appeal before us through Assistant Attorney-General Fusco. The brief on behalf of the State was drafted by Mr. Calissi, Prosecutor of the Pleas of Bergen County, and Special Assistant Prosecutor Valente. The Assistant Attorney-General at the argument frankly stated, and the prosecutor acquiesced therein, that he could not conscientiously support the brief filed by the State and argue for an affirmance and confessed error in the conviction below of the defendant due to the lack of a penalty contained in the statute, *N. J. S. 2A*:171-1, upon which the complaint was based. However, a confession of error relating to the jurisdiction of the subject matter is not binding on this court.

We find a decision with respect to the constitutional questions unnecessary for the disposition of the cause and we shall therefore not determine such questions or comment

with respect thereto. Such is the regular practice of this court. *Michaelson v. Wall Tp.*, 92 *N. J. L.* 72 (*Sup. Ct.* 1918); *Grobart v. Grobart*, 5 *N. J.* 161, 165 (1950).

The direct source of our law for the observance of Sabbath Days goes back as far as 1704, *Allinson's Acts*, 3. See also *State v. Maier*, 13 *N. J.* 235, 261 (1953). The statutory section which was the immediate predecessor of *N. J. S.* 2A :171–1 was *R. S.* 2 :207–1 which read as follows:

> "No traveling, worldly employment or business, ordinary or servile labor or work either upon land or water, except works of necessity and charity, and no shooting, fishing, not including fishing with a seine or net, which is hereinafter provided for, sporting, hunting, gunning, racing, frequenting of tippling houses, or any interludes or plays, dancing, singing, fiddling or other music for the sake of merriment, playing at football, fives, ninepins, bowls, long bullets or quoits, nor any other kind of playing, sports, pastimes or diversions shall be done, performed, used or practiced by any person within this state on the Christian Sabbath, or first day of the week, commonly called and hereinafter designated as Sunday.
>
> Whoever, being of the age of fourteen years or upwards, offends in the premises, shall, for every such offense, forfeit and pay, to the use of the poor of the township in which such offense shall be committed, the sum of one dollar."

It should be noted that that section contained a penalty. In the Revision of 1951, *N. J. S.* 2A :171–1 was enacted to provide as follows:

> "No worldly employment or business, except works of necessity and charity, shall be performed or practiced by any person within this state on the Christian Sabbath, or first day of the week, commonly called and hereinafter designated as Sunday."

Neither this section nor the ensuing sections, *N. J. S.* 2A :171–2 to 5, contain any statutory penalty.

The appellant's position is that his conviction is void because this section does not provide any penalty. The reason for the lack of the penalty clause is not for this court to determine. We are referred, however, to a note by the chairman of the Advisory Committee on the Revision of Statutes, found in the foreword to *Title 2A*:

"The general object of the Revision of the Sunday laws (*N. J. S.* 2A:171–1 to 2A:171–12) was not to make broad changes in substance, but rather to eliminate obsolete provisions. It was intended to leave municipalities with the power, they theretofore had, to control and regulate Sunday activity."

But *L.* 1951, *First Special Session, c.* 344, *sec.* 8, provides:

"8. In the construction of the said Title 2A, or any part thereof, no outline or analysis of the contents of said title or of any subtitle, chapter, article or other part thereof, no cross-reference or cross-reference note and no headnote or source note to any section of the said Title 2A shall be deemed to be a part of the said title."

Further, this statement may be a little bit broader in its implication than the existing law interpreting the prior statutes as to the powers of municipalities. Some cases hold that municipalities had the right under the Home Rule Act to supplement the provisions of the Sunday law, *Sherman v. City of Paterson,* 82 *N. J. L.* 345 (*Sup. Ct.* 1912); *Schachter v. Hauenstein,* 92 *N. J. L.* 104 (*Sup. Ct.* 1918); but in *Singer v. First Criminal Court, etc.,* 79 *N. J. L.* 386 (*Sup. Ct.* 1910), the court held a municipal corporation could not confer a right to violate the provisions of the Sunday law. See also *City of Elizabeth v. Windsor-Fifth Ave.,* 31 *N. J. Super.* 187, 190 (*App. Div.* 1954).

Penal statutes are to be strictly construed, and while it may be said that it is to be presumed that the Legislature would not denounce certain acts without providing a penalty, yet penal consequences cannot rest upon a mere presumption. Such legislative purpose must be expressed, and in clear and direct language.

We find no such language indicating an intention by the Legislature that its purpose was to substantially increase the penalty for a violation of the act or vesting this power in the municipalities. We cannot supply it by implication.

A law generally consists of three parts: (1) the scope and intent of the law; (2) the content of the law; (3) a sanction or penalty, and this is peculiarly true of a criminal or *quasi*-criminal statute. A criminal statute without a pen-

alty clause is of no force and effect. The penalty is an essential to such a statute, and if none is specified a court has no warrant to supply the penalty if the Legislature has failed to clearly manifest such intention to impose one.

The eminent author, 1 *Bishop, Criminal Law* (*9th ed.*), *sec.* 6, states "Indeed, 'law,' without punishment for its violation, is in the nature of things impossible."

Blackstone with unusual clarity states the following fundamental propositions:

"As to offenses merely against the laws of society, which are *mala prohibita*, and not *mala in se*; the temporal magistrate is also empowered to inflict coercive penalties for such transgressions; and this by the consent of individuals; who, in forming societies, did either tacitly or expressly invest the sovereign power with the right of making laws, and of enforcing obedience to them when made, by exercising, upon their non-observance, severities adequate to the evil. * * *

* * * and it is moreover one of the glories of our English law that the species, though not always the quantity or degree, of punishment is *ascertained* for every offense; and that it is not left in the breast of any judge, nor even of a jury, to alter that judgment, which the law has beforehand ordained, for every subject alike, without respect of persons. For, if judgments were to be the private opinions of the judge, men would then be slaves to their magistrates; and would live in society, without knowing exactly the conditions and obligations which it lays them under. And besides, as this prevents oppression on the one hand, so on the other it stifles all hopes of impunity or mitigations; with which an offender might flatter himself, if his punishment depended on the humor or discretion of the court. Whereas, where an established penalty is annexed to crimes, the criminal may read their certain consequence in that law; which ought to be the unvaried rule, as it is the inflexible judge, of his actions." 4 *Chitty Blackstone, p.* *8, *378.

█ This fundamental principle that every criminal statute must contain a penalty is one of the foundations of our criminal law and is a development from the deep-seated resentment of the Star Chamber method of trial. See *Pound, Spirit of the Common Law,* 49, 50.

█ Where a statute fails to provide a penalty it has been uniformly held that it is beyond the power of the court to prescribe a penalty. *United States v. Evans,* 333 *U. S.* 483, 68 *S. Ct.* 634, 92 *L. Ed.* 823 (1948); *State of Tennessee v.*

*Davis,* 100 *U. S.* 257, 25 *L. Ed.* 648 (1880) ; *Mossew v. United States,* 266 *F.* 18, 11 *A. L. R.* 1261 (2 *Cir.* 1920) ; *McNary v. State,* 128 *Ohio St.* 497, 191 *N. E.* 733 (1934) ; *Commonwealth ex rel. Varronne v. Cunningham,* 365 *Pa.* 68, 73 *A. 2d* 705 (*Sup. Ct.* 1950).

The wisdom of this statute is for the Legislature, and while its effect on a criminal proceeding instituted, such as the one here, produces an anomaly the most that this court can do is call the attention of the Legislature to the result. *Dacunzo v. Edgye,* 19 *N. J.* 443 (1955).

█ Our holding is that due to the lack of a penalty in this statute a person cannot be convicted as a disorderly person and fined as such for a violation thereof. Such holding is limited strictly to the applicability of *N. J. S.* 2A :171–1 to a criminal proceeding.

The judgment is reversed.

VANDERBILT, C. J. (dissenting).

### I.

On Sunday, February 13, 1955, the defendant owned at 37-14 Broadway, Fair Lawn, an automobile service business providing under one roof a complete service for automobiles, including the sale of gasoline and oil, as well as greasing, repairs and automatic car washing. On the day in question the defendant's place of business was open and in operation, including the washing of cars. The premises was so arranged that the automobiles coming upon the premises to be washed are able to park there without interfering with the operation of the public highway. No charge has been made against the sale of gasoline and oil, apparently on the theory that it constitutes work of necessity. The violation for which the defendant was prosecuted applied only to car washing on Sunday.

In the municipal court the defendant was found guilty of violation of *N. J. S.* 2A :171–1 and a $25 fine was imposed. On appeal the conviction was affirmed. The County Court rejected the defendant's contentions that *N. J. S.* 2A :171–1

was ineffective as a criminal statute for the lack of a penalty clause, and held that although the statute does not contain any penalty clause among its provisions, it is clear that *N. J. S.* 2A:169–4, which is part of the same subtitle, supplies the punishment for such offense. The County Court also rejected the second contention by the defendant that car washing was a work of general necessity and, therefore, not violative of *N. J. S.* 2A:171–1, and held that the business of car washing was merely a business of convenience to those who desire the appearance of an attractive automobile but who do not choose, for one reason or another, to find time during six days of the week to effectuate their wish.

Thus stated, the facts seem insignificant, indeed almost innocent, but the decision of the case involves far-reaching consequences that through the constantly increasing use of the automobile and by reason of the advent of suburban shopping centers and roadside shops along the main arteries of traffic may affect both living and business in almost every municipality of the State. Under the majority opinion a municipality may by ordinance prevent Sunday selling under *N. J. S. A.* 40:48–1(6) and *N. J. S. A.* 40:48–2 and give its inhabitants the relative peace and quiet intended by the statutes, but only at the cost of driving considerable business from its area into other municipalities which do not see fit to pass such an ordinance and whose businessmen will be free from any state control. Such municipalities, on the other hand, may degenerate into Sunday shopping centers in the era of the five-day week for almost everybody, when lack of free time for shopping except on Sunday cannot be legitimately urged as a justification for Sunday selling. Passing by considerations of relative peace and quiet, we are witnessing these sound business standards of a five or even a six-day week degenerate in some communities into the business ethics of the jungle. If this movement goes on, much of the effort through zoning to preserve our suburban and rural areas and as much as possible of our cities will be in vain. These things, I cannot bring myself to believe, the Legislature ever intended. That my fears are not fanciful is

borne out by a newspaper article which appeared in the press written the last few weeks under a Jersey City date line:

"This city's retail merchants are intensifying a campaign to force competitors to keep their doors locked on Sundays. Their principal adversaries are the highway shopping centers that have been springing up in outlying areas at an increasing rate.

A Jersey City ordinance of March 2, 1954, provides a fine of $200 or ninety days imprisonment for merchants who sell anything except certain 'essential' products on Sundays. A series of arrests has convinced would-be Sabbath salesmen that Sunday business is unprofitable.

However, local retailers report that their day of rest becomes uncomfortable when they see consumers driving to highway stores beyond the reach of the city ordinance.

The only solution, according to the Jersey City Merchants Council, would be a new state law to halt the practice. * * *

There is no organized opposition to the Sunday closing proposals, but individual highway store owners describe the campaign bitterly as coercion and restraint of trade. * * *" (*New York Times,* December 3, 1955).

The instant case in spite of its seeming insignificance is one of the most far-reaching in its social and business consequences that has ever come before us for decision.

The majority view is premised on a comparison between the present law (*N. J. S.* 2A:171–1) and its predecessor (*R. S.* 2:207–1) and on the fact that the former law expressly provided for a penalty while neither the existing section "nor the ensuing sections, *N. J. S.* 2A:171–2 to 5 contain any statutory penalty." But no mention is made of the applicability of the general penalty provided for in the same subtitle (*N. J. S.* 2A:169–4). Nor can I subscribe to the view that there is no indication of "an intention by the Legislature that its purpose was to substantially increase the penalty for a violation of the act or vesting this power in the municipalities." *Fennan v. Atlantic City,* 88 *N. J. L.* 435 (*Sup. Ct.* 1916); *Atlantic City v. France,* 75 *N. J. L.* 910 (*E. & A.* 1907); *McQuillan on Municipal Corporations* (*3d ed.*), *sections* 17.15, 23.04, 23.07. Consequently, I feel constrained in this most important matter to express my independent views.

## II.

The pertinent sections of the statute involved in this matter all appear in *subtitle* 12 of *Title* 2A, entitled "Disorderly Persons," which subtitle includes *chapters* 169, "General Provisions"; 169A, "Registration of Persons Convicted of Certain Offenses"; *chapter* 170, "Disorderly Persons Generally"; and *chapter* 171, "Observance of Sabbath Days":

*N. J. S.* 2A :169-1 provides:

"This subtitle (including the Sunday law 2A :171-1) may be cited as the 'disorderly persons law.' "

*N. J. S.* 2A :169-4 provides:

"General penalty. Except as otherwise expressly provided, a person adjudged a disorderly person shall be punished by imprisonment in the county workhouse, penitentiary or jail for not more than 1 year, or by a fine of not more than $1,000, or both."

*N. J. S.* 2A :171-1 provides:

"Worldly employment or business prohibited. No worldly employment or business, except works of necessity and charity, shall be performed or practiced by any person within this state on the Christian Sabbath, or first day of the week, commonly called and hereinafter designated as Sunday."

(1) It would seem to be beyond dispute that the washing of cars is not a work of necessity or charity. The defendant contends, however, that a violation of the Sunday law does not constitute disorderly conduct either by the terms of the statute itself, *N. J. S.* 2A :171-1, or by any intent on the part of the Legislature to upgrade Sunday law violations to disorderly conduct; and by going beyond the section itself to find the applicable penalty, the County Court misapplied its power of statutory construction. It says that the statute, *N. J. S.* 2A :171-1 proscribing all but works of necessity and charity on the Christian Sabbath is clear and unambiguous and consequently such reading in of a penalty is contrary to the well-settled rule that such statutes require no construc-

tion, citing *State v. Mundet Cork Corp.*, 8 *N. J.* 359, 365 (1952).

It would appear that there are only two logical views of the problem presented: *first,* that the intention of the Legislature was to have the violation of the Sunday statute constitute disorderly conduct or an offense in the nature thereof and covered by the general penalty for disorderly conduct provided for in *N. J. S.* 2A:169–4, *supra*; or *secondly,* that the statute was to be merely declarative of the public policy of the State against Sunday activity, with penalties left to be provided for by local authorities pursuant to local ordinances.

The declaration of the revisors of Title 2 contained in the foreword to Title 2A by Senator, now Judge Alfred C. Clapp, to the effect that:

> "The general object of the Revision of the Sunday laws (*N. J. S.* 2A:171–1 to 2A:171–12) was not to make broad changes in substance, but rather to eliminate obsolete provisions. It was intended to leave municipalities with the power, they theretofore had, to control and regulate Sunday activity."

furnishes no help in choosing between these two views because under either view the local authorities have the power to control and regulate Sunday activity—under the first view, because the municipalities have the power to adopt ordinances courts, *N. J. S.* 2A:8–21(*d*), which covers "Violations of the 'disorderly persons law,' subtitle 12 of this title"; *State v. Maier,* 13 *N. J.* 235 (1953); and under the second view because the municipalities have the power to adopt ordinances regulating such conduct either under the police power, *N. J. S.* 40:48–2, or under the power to deal with morality, *N. J. S.* 40:48–1(6); *City of Elizabeth v. Windsor-Fifth Avenue,* 31 *N. J. Super.* 187, 190 (*App. Div.* 1954).

It is hornbook principle that every criminal statute must provide for a penalty and with respect to the offense here involved no penalty can be imposed by a court unless statutory provision is made therefor. But it is equally fundamental that the Legislature will not be deemed to have intended a meaningless act, if the contrary intent is equally

ascribable to it. Particularly is this so when dealing with such a basic proposition as is here involved with far-reaching effects as I have indicated on our mode of living and our customary methods of doing business. In this regard the case of *United States v. Evans, 333 U. S.* 483, at *page* 486, 68 *S. Ct.* 634, at *page* 636, 92 *L. Ed.* 823 (1948), cited by the majority as authority for its position is pertinent:

"* * * where Congress has exhibited clearly the purpose to proscribe conduct within its power to make criminal and has not altogether omitted provision for penalty, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose. This is as true of penalty provisions as it is of others. *United States v. Brown,* 333 *U. S.* 18, 68 *S. Ct.* 376 [92 *L. Ed.* 442]."

See also Mr. Justice Frankfurter's observation in the Sixth Annual Benjamin N. Cardozo Lecture before the Association of the Bar of the City of New York entitled *Some Reflections On The Reading of Statutes*:

"Legislation has an aim; it seeks to obviate some mischief, to supply an inadequacy, to effect a change of policy, to formulate a plan of government. That aim, that policy is not drawn, like nitrogen, out of the air; it is evinced in the language of the statute, as read in the light of other external manifestations of purpose. That is what the judge must seek and effectuate, and he ought not to be led off the trail by tests that have overtones of subjective design. We are not concerned with anything subjective. We do not delve into the mind of legislators or their draftsmen, or committee members." 47 *Col. L. R.* 527, 538–539 (1947).

Serious consideration of the history of the act itself and kindred statutes, *N. J. S.* 2A : *Subtitle* 12, *N. J. S. A.* 23 :3– 32, *N. J. S. A.* 23 :4–24, *N. J. S. A.* 23 :5–24.4 and 24.11, *R. S.* 45 :4–26, leads me inevitably to the natural conclusion that the purpose of the act was to prohibit Sunday activity on a statewide basis and to give effect to such prohibition by the general penalty provisions of *N. J. S.* 2A :169–4.

In *section* 169–1 of *Title 2A* we find definite statutory expression that the entire *Subtitle* 12, which includes the "observance of Sabbath Days" sections (171–1 to 12) is to be

cited as the "disorderly persons law." What more cogent basis could be found for interrelating the sections of these four chapters of *Subtitle* 12 than the expression of the legislative desire to designate the entire subtitle as a law governing disorderly persons? An analysis of the penalty provisions of the four chapters of *Subtitle* 12 shows that in making the revision some sections of prior statutes were taken in as they previously appeared and some sections were changed in part and some extensively. In some cases the penalties were already expressly provided for and these sections were adopted in that form. A great bulk of sections in the revision came as a result of the downgrading of misdemeanors to disorderly conduct, in which case a general penalty provision was made necessary or else repetitive and express provision would have had to be made in each section. Instead of this procedure a general penalty clause was made applicable.

It cannot be said that because the Sunday Law sections do not specifically designate violators as disorderly persons or as being guilty of disorderly conduct prevents any application of the general penalty provision. Violators of the "Disorderly Persons Law" are unquestionably disorderly persons and I, therefore, deem the absence of any such terms not to be of any controlling significance.

Violators of this law are to be punished as expressly provided for in the particular sections, *i. e., N. J. S.* 2A:170–65, and in the absence of any such special penalty provision are to be punished in accord with the expressions of the generally applicable penalty section—*N. J. S.* 2A:169–4.

Is it conceivable that the Legislature intended not to make the provisions of the "disorderly persons law" relating to "Observance of Sabbath Days" (*N. J. S.* 2A:171–1 to 12) punishable offenses and yet provide a penalty for other similar statutory offenses in other titles? *N. J. S. A.* 23:4–24, recently amended in 1953, still prohibits hunting or carrying a gun in the woods or fields on Sunday under a penalty of $20 for each offense. *N. J. S. A.* 23:5–24.4, *L.* 1941, *c.* 211, *p.* 612, *section* 5, as amended, prohibits fishing with nets on Sunday under penalty of $50 for each

offense, *N. J. S. A.* 23:5–24,11. *R. S.* 45:4–26 has long prohibited any barbering work on Sundays under a penalty of a fine not exceeding $25 or imprisonment for more than 30 days for the first offense and double that for each subsequent offense. Has the Legislature singled out these acts to make then punishable and not the other worldly employments or business covered by *N. J. S.* 2*A*:171–1? To say yes would be to strain on our power of construction. See *Munroe Smith, Jurisprudence in a General View of European Legal History and Other Papers* (1927) particularly at *pp.* 352–353. The majority has vitiated a positive legislative act, not by exceeding the scope of the judicial function in legislative interpretation as is more often the case, but by failing to translate the Legislature's command. *Frankfurter, Some Reflections on the Reading of Statutes, supra,* 47 *Col. L. R.* 527, 529.

(2) The defendant next urges that the act in issue (*N. J. S.* 2*A*:171–1) is so vague and ambiguous and uncertain on its face as to deprive the people of this State of their liberty and property without due process of law. Specifically, it claims that the abstract terms used as standards of guilt can be sustained as sufficiently definite only if the terms have a technical or other special meaning, well enough known to enable those with knowledge of our language to apply them correctly. It complains that the words "worldly," "employment," "business," "necessity," and "charity" are so capable of a variety of meanings, depending on who is called upon to make such determinations, when and under what circumstances, as to render such standards void. For example, it says, what is worldly to one jury or court may not be worldly to another jury or court and similarly, what is a necessity to one may not be a necessity to another. Under these circumstances, the defendant claims, the statute in question violates the State and Federal Constitutions.

I find no merit to the defendant's argument under this point. This type of approach can be indulged in with almost any statute on our books. Significantly, the Supreme Court of Pennsylvania, in construing a statute of that state con-

taining the same words "worldly," "employment," "business," "necessity," and "charity," in *Commonwealth ex rel. v. American Baseball Club of Philadelphia*, 290 Pa. 136, 138 A. 497, 500, 53 A. L. R. 1027 (1927), stated:

"On appellant's * * * proposition, that the act is unconstitutional for uncertainty, we think very little is required to be said. * * * It has been on the statute books for 133 years, and has been the subject of much judicial consideration. When its language is given its ordinary, not a strained, construction, its meaning we think is plain. It may be that those who do not wish to understand or abide by its provisions find them uncertain * * *. We can see no basis whatever for the argument that the act violates the Fourteenth Amendment to the Federal Constitution."

(3) The defendant next contends that the Sunday law is a religious edict, religious in origin and intent, designed to aid religions, both in general and in particular, for objects unmistakably sectarian and, therefore, contravenes the provisions of the Federal and our State Constitutions, prohibiting state interference with religion; the First and Fourteenth Amendments of the Constitution of the United States, N. J. Constitution, Article I, paragraphs 3, 4 and 5.

It has long been recognized that Sunday observance laws are not unconstitutional infringements on the religious freedoms provided for in either Constitution. The statute in question does not involve the establishment of any religion or any prohibition against the free exercise of any religion. It sets up no church nor does it make attendance upon religious services or worship compulsory. It does not obligate anyone to support or repair any church nor does it prefer one or discriminate against any religion or sect. Although Sunday laws have a religious origin, the current philosophy was well expressed by the trial court:

"* * * the physical, intellectual and moral welfare of mankind requires a periodic day of rest from labor, and as some particular day must be fixed, the one most naturally selected is that which is regarded as sacred by the greatest number of citizens. * * *"

See *People v. Friedman*, 302 N. Y. 75, 96 N. E. 2d 184 (*Ct. App.* 1950); *Soon Hing v. Crowley*, 113 U. S. 703,

5 *S. Ct.* 730, 28 *L. Ed.* 1145. See also the cases collected in 83 *C. J. S., Sunday,* § 3, *p.* 801.

(4) The defendant finally contends that the Sunday law is an invalid exercise of the State's police power, for it bears no real or substantial relation to the public health, morals, safety, or convenience. It also urges that the provisions of this law are discriminatory on their face and contain exceptions to their provisions which have no rational basis and thus deprive the defendant of its right to equal protection of the laws. I am unimpressed by these arguments. The rationale that is everywhere used to sustain Sunday laws under the police power is that the State may protect its citizens from physical or moral debasement which comes from uninterrupted labor; were they not obligatory the deleterious effect would soon become evident, *Soon Hing v. Crowley, supra.* The argument as to the equal protection of the law may be answered briefly by saying that whatever discrimination exists by reason of excepting some activities as against others has valid bases and is certainly not arbitrary. The purpose of the Sunday law is for the general good and welfare of the public and should be liberally construed in favor of validity and as being within the constitutional power of the Legislature.

I would affirm the conviction.

Mr. Justice WACHENFELD has authorized me to say that he joins in this opinion.

*For reversal*—Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Chief Justice VANDERBILT, and Justice WACHENFELD—2.