The STATE BOARD OF REGENTS OF the UNIVERSITY and Community College System of Tennessee et al., Appellants,

v.

Yvonne GRAY, Cheryl Howard and Constance Shelton, Appellees.

Supreme Court of Tennessee.

Jan. 23, 1978.

Richard Lodge, Robert B. Littleton, Asst. Atty. Gens., Nashville, for appellants; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

Robert L. Delaney, G. Gordon Bonnyman, Jr., Nashville, for appellees.

## OPINION

BROCK, Justice.

This is a disciplinary action against the appellees, Yvonne Gray, Cheryl Howard and Constance Shelton, students at Tennessee State University. The appellees were found guilty of assault and battery by the Student-Faculty Advisory Committee of the University and suspended from classes for the remainder of the 1975–1976 academic year. Upon review by the president of the University, the suspension was reduced to permit completion of the first semester but was otherwise affirmed. Appellees then appealed to the chancery court as provided by the Administrative Rules and Procedure Act, T.C.A., § 4–523. The Chancellor reversed the administrative determination and the school officials have appealed to this Court.

The facts out of which this dispute arose are undisputed. The appellees were students at Tennessee State University and were members of a sorority known as Delta Sigma Theta. During the evening hours of November 5, 1975, the appellees went to the fourth floor of Wilson Hall on the campus of the University to the room of Miss Renee Vinson, a fellow student. Miss Vinson, a Delta Sigma Theta "pledge", and three other "pledges" were called together in the room and were asked to answer questions regarding sorority history. When they were unable to give satisfactory answers, the "pledges" were severely beaten by the appellees. The injuries thus inflicted required that three of the "pledges" obtain hospital treatment and that one be confined to an infirmary for five days.

Pursuant to established procedure, the appellees were notified in writing that they were charged with assault and battery and were entitled to a hearing. At the hearing each of the appellees filed a plea of not guilty but offered no evidence themselves and did not cross examine any of the witnesses who testified against them. The hearing was conducted before the Student-Faculty Advisory Committee which found them guilty as charged and voted to suspend them from school for the remainder of the 1975–1976 academic year. The basis of the charges is demonstrated in the transcript of the testimony heard by the Student-Faculty Advisory Committee. We quote from that transcript as follows:

"Ms. Sayles stated that Yvonne Gray paddled them on their buttocks with a paddle that had been concealed in Cheryl Howard's sock. She described the paddle as being red with white ducks. She stated that Ms. Byrd paddled her feet; Ms. Shelton hit their hands with a comb and Ms. Howard held their hands down on their ankles while they were being paddled on the buttocks by Ms. Gray. She stated that she was confined to the health center for five days with bruised feet and blood clots on her buttocks. Ms. Vinson stated that Ms. Howard held her while her feet were being paddled. She stated that she couldn't see who was hitting her because a towel was put in front of her face and mouth to keep her from screaming.

"Ms. Joe stated that Ms. Howard pulled a red paddle from her sock and Misses Gray

and Shelton paddled her buttocks when she refused to hit her Pyramid Sisters. She stated that Miss Gray also paddled her bare feet and Ms. Shelton hit her on the hands with a blue comb. Her hand began to swell and her Big Sisters told her to soak it in the sink. She stated that they were told not to go to the infirmary and that they had better not tell anyone what had happened. She stated that she was referred to Meharry Hospital by Dr. Carr A. Treherne, Director of the University Health Center, to have x-ray pictures made of her hand. It was swollen and very painful and thought to be fractured.

Ms. Clark stated that Ms. Howard pulled a paddle from her sock and she, Misses Sayles and Joe were hit very hard with it on their buttocks. She stated that Ms. Shelton beat them extremely hard on their hands with a comb and Ms. Gray beat her feet with a paddle. She stated that they decided to tell their advisor about 5:30 p. m. the next day (November 6) because Ms. Sayles and Joe were in so much pain."

Although the appellees did not testify before the committee, they did testify by deposition before the chancery court. In her deposition Yvonne Gray stated that the version of the facts above given was substantially true.

The Chancellor affirmed the findings made by the Student-Faculty Advisory Committee but reversed the suspension of the appellees because of his conclusion that the disciplinary rule under which appellees had been found guilty was not a valid rule because it did not comply with the requirements of the Uniform Administrative Procedures Act. It is our opinion that in this conclusion the Chancellor erred.

The conduct of which the appellees were found guilty had been previously proscribed by Tennessee State University by written rule which it published in at least two forms, (1) a student handbook a copy of which had been furnished to each of the appellees and (2) "Rules of Discipline— 1975–1976" which had been duly approved by the Attorney General and filed with the Secretary of State in compliance with the Uniform Administrative Procedures Act.

The student handbook had not been approved by the Attorney General or filed with the Secretary of State. The student handbook contained the following provisions among others:

"*Severe discipline penalties imposed*: Severe discipline involves (1) suspension for a definite period ___ the student is suspended with the privilege of returning to the university at the end of a given period; (2) expulsion ___ is the severance of a student from university participation permanently.

\*     \*     \*     \*     \*     \*

"*Offenses requiring severe discipline*:

\*     \*     \*     \*     \*     \*

"Aggravated assault . . ."

Appellee Howard admitted having read the student handbook but the other appellees denied that they had read the handbook prior to the misconduct here involved.

The "Rules of Discipline—1975–1976" which had been duly approved by the Attorney General and filed with the Secretary of State provided in pertinent part:

"Physical combat with or without lethal weapons is prohibited on the university campus as is . . . aggravated assault . . ."

These rules did not, however, specify the sanctions which might be imposed for their violation.

I

The Chancellor held that the university was an "agency" within the meaning of the Uniform Administrative Procedures Act, T.C.A., § 4–508, whose rules must conform to the requirements of that act in order to be valid, T.C.A., § 4–509. With this conclusion of the Chancellor, we agree. The Uniform Administrative Procedures Act applies to any "board, commission, committee, department, officer, or any other unit of state government authorized or required by any statute or constitutional provision to make rules or to determine

contested cases." T.C.A., § 4–508(a). The State Board of Regents, which governs the university, is such an agency. The statute of its creation provides that it shall have power to "establish policy and regulations regarding the campus life of the institutions . . . delegating to the chief executive officer of the institution such powers and duties as are appropriate for the efficient administration of the institution and its program." T.C.A., § 49–3239. Moreover, in our opinion, the language of T.C.A., § 4–508(g)(5)b. contemplates that statements of policy of state supported institutions of post secondary education which deal with the discipline or housing of students are "rules" within the meaning of the act and must meet the act's requirements in order to be valid.

## II

The appellees insist and the Chancellor held that the rule proscribing aggravated assault, as contained in the student handbook, did not furnish any basis for the suspension of the appellees because the handbook had not been approved by the Attorney General and filed with the Secretary of State, as required by the Uniform Administrative Procedures Act, T.C.A., § 4–510. Hence, they argue that it was invalid as applied to the appellees, notwithstanding the provision of the act that: "This [invalidating] provision is not applicable in favor of any person or party who has actual knowledge of the rule, order or decision." T.C.A., § 4–509(b).

■ The Chancellor found that the appellees did not have actual knowledge of the rules contained in the student handbook although he expressly found "each of the plaintiffs was given a copy of the student handbook." We disagree. Since each of the appellees was given a copy of the student handbook, we hold that they are charged with "actual knowledge" of its contents. This Court has stated the principle that:

"The rule upon the question of notice is that whatever is sufficient to put a person upon inquiry *is notice of all the facts to which that inquiry will lead* when prosecuted with reasonable diligence and in good faith. . . . Means of knowledge with the duty of using them are deemed equivalent to knowledge itself, and passive good faith will not serve to excuse willful ignorance." *Covington v. Anderson,* 84 Tenn. 310 (1886). See also *Reusche v. Berling,* 87 Cal.App. 559, 262 P. 392 (1927).

Although "notice" rather than "actual knowledge" was the issue in that case, other courts have applied the same principle when "actual knowledge" was the issue. *O'Ferral v. Coolidge,* Tex.Civ.App., 225 S.W.2d 582, 584 (1949); *Portman v. Earnhart,* Tex.Civ.App., 343 S.W.2d 294, 297 (1960). We reaffirm this principle and hold that it applies in cases in which the issue of actual knowledge arises under the Uniform Administrative Procedures Act. We hold that "actual knowledge" of the rules in the handbook was shown by proof that a copy thereof was handed to the appellees. It is our opinion that placing a handbook into the hands of a student is much more likely to result in a consciousness of its contents by the student than the filing of such a handbook with the Secretary of State.

Since the appellees had actual knowledge of the rules contained in the student handbook, it was not necessary that those rules be approved by the Attorney General and filed with the Secretary of State in order for them to be valid and binding upon the appellees. T.C.A., § 4–509.

■ Moreover, in our opinion, the "Rules of Discipline—1975–1976," which were duly filed by the University with the Secretary of State after approval by the Attorney General, likewise furnished an adequate basis for the administrative action taken against the appellees. We do not agree with the conclusion of the Chancellor that these rules were inadequate because they did not contain sanctions for their violation. We find no express provision in the Uniform Administrative Procedures Act to the effect that a rule of discipline which clearly defines the prohibited act and otherwise complies with the Uniform Adminis-

trative Procedures Act is invalid because the sanctions for its violation are not specified therein. Neither do we conclude that the purposes of the statute require that such a provision be implied. See 73 C.J.S. Public Administrative Bodies and Procedure, § 100, 418. Although the failure to provide a penalty for the commission of a criminal offense defined by statute renders such a statute unenforceable, *U. S. v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948); *Mossew v. U. S.*, 2 Cir., 266 F. 18, 11 A.L.R. 1261 (1920); *State v. Fair Lawn Service Center*, 20 N.J. 468, 120 A.2d 233 (1956), the same, in our opinion, is not true of a disciplinary rule for students of a public institution. See *Norton v. Discipline Committee of East Tennessee State University*, 6 Cir., 419 F.2d 195 (1969).

■ Finally, we conclude that the rules both in the student handbook and in the registered "Rules of Discipline—1975–1976," prohibiting the assaults committed by the appellees are expressly excluded from the requirements of the Uniform Administrative Procedures Act by T.C.A., § 4–508(g)(4) which excludes "general policy statements which are substantially repetitious of existing law . . . ." The regulations in question in proscribing "aggravated assault" merely repeated existing laws that prohibit such conduct. *Saunders v. State*, 208 Tenn. 347, 345 S.W.2d 899 (1961); *Rushing v. State*, 196 Tenn. 515, 268 S.W.2d 563 (1954). Therefore, they are excluded from the statute and may be validly applied without compliance with the Uniform Administrative Procedures Act.

### III

■ The Chancellor, in part, based his decision upon his finding that the Student-Faculty Advisory Committee did not file proper findings of fact, conclusions of law, and reasons for its decision as required by T.C.A., § 4–519. We think that there was substantial compliance with this requirement. The committee found in writing that the appellees were each guilty as charged, the charge having been previously specified in writing as: "___ misconduct—

severe in that on Wednesday, November 5, 1975, at approximately 11:30 p. m., you are charged with assault and battery on Misses Kim Clark, Renee Vincent, Candias Joe and Cynthia Sayles, in room 416, Wilson Hall." In the circumstances of this case, this was sufficient. Moreover, the statute forbids reversal by the Court of the agency determination "unless for errors which affect the merits of the decision complained of." T.C.A., § 4–523(i). Since the record clearly discloses the basis for the committee's decision, we find no error affecting the merits.

The decree of the Chancery Court is reversed and the complaint is dismissed, with costs taxed against the plaintiffs-appellees.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.