STATE OF NEW JERSEY v. JOHN C. OTT, JR., DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Monmouth County

Decided October 16, 1981.

*Jon Steiger* for defendant.

*Barry Shapiro*, Assistant Monmouth County Prosecutor, for the State (*Alexander D. Lehrer*, Prosecutor, attorney).

McGANN, J. S. C.

Defendant Ott pleaded guilty to 15 counts of forgery, *N.J.S.A.* 2C:21–1(a)(2), and five counts of theft by failure to make required disposition of property, *N.J.S.A.* 2C:20–9. Those charges were part of a 58-count indictment involving charges of forgery, uttering a forgery, theft by deception, embezzlement and theft by failure to make required disposition of property. They all arose from the business operation of the American Automobile and Travel Club, Inc., a corporation owned by defendant through which he engaged in the business of placing automobile insurance coverage and of providing auxiliary travel services to club members. The cash flow problems of the corporation led defendant into two types of criminal conduct: (1) he would advise clients that he had placed insurance coverage for them, would accept the required premium and then delay placing the coverage until the company had ready cash to do so; in the case of some clients that never came to pass; (2) in some cases rebate-of-premium checks were received from insurance carriers made out to the corporation and to the client. Defendant forged the client's name and deposited the checks in the corporate account.

Ott is before the court for sentencing on his guilty pleas. The issue here focuses on the forgery charges. The question is whether they shall be sentenced as third degree or fourth degree offenses. That question has been addressed by the three-judge Resentencing Panel created by the Supreme Court. *State v. Reed,* 174 *N.J.Super.* 407 (Resent. Panel 1980); *State v. Young,* 174 *N.J.Super.* 489 (Resent. Panel 1980). In those cases it was held, for the purposes of *N.J.S.A.* 2C:1–1(d)(2), that forgery of a check was a crime of the third degree if the check was for $500 or more, and one of the fourth degree if the check was for less than $500 and more than $200. For the purpose of an original sentencing under the Code I conclude otherwise.

*N.J.S.A.* 2C:21–1, in pertinent part, provides as follows:

a. Forgery. A person is guilty of forgery if, with purpose to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) Alters or changes any writing of another without his authorization or ratification.

(2) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act. . . .

(3) Utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2).

"Writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege, or identification.

b. Grading of forgery. Forgery is a crime of the third degree if the writing is or purports to be part of an issue of money, securities, postage or revenue stamps, or other instruments, certificates or licenses issued by the government, or part of an issue of stock, bonds or other instruments representing interest in or claims against any property or enterprise.

Otherwise forgery is a crime of the fourth degree.

. . . . . . . .

It is apparent, and surprising, that the Legislature, in enacting the grading section of the forgery statute, did not clearly include forgery of checks and other bank instruments such as withdrawal slips. It is in that context that the crime of forgery usually occurs. Unless a check or a withdrawal slip constitutes an "issue of money," forgery of a signature on either must fall into the "otherwise" category and be sentenced as a fourth

degree crime. It would torture plain meaning to say that "issue of money" is the same as "check." Had the Legislature intended forgery of a signature on a check to be a third degree crime, it could have said so. It did not.

This anomaly troubled the resentencing panel in *State v. Reed, above.* It was therein pointed out (at 410) that, as proposed, the Penal Code made forgery of a "commercial instrument" a second degree offense, but, as enacted, omitted that reference entirely. In making its analysis the panel was attempting to determine what offense under the New Jersey Penal Code was equivalent to the prior forgery offense under *N.J.S.A.* 2A:109–1(a), and then to compare the penalty imposed on the old with the penalty available for the new offense. The 2A offense was a high misdemeanor with a maximum sentence of seven years. Defendant received five to seven-year sentence on the charge. The threshold question for the panel was whether Reed qualified for consideration under *N.J.S.A.* 2C:1–1(d)(2). The amount involved in *Reed* was $560. Reasoning that forgery was a form of theft in that money was fraudulently obtained thereby, the panel looked to penalties under *N.J.S.A.* 2C:20–2(b) for fraud crimes under the theft statute and determined that obtaining more than $500 by deception was a third degree offense. Since the maximum sentence for it was five years under the Code, Reed qualified for review to decide whether there was "good cause" to reduce his sentence.[1]

It is one matter to theorize on the effect of criminal penal statutes when a person already sentenced can only benefit therefrom. It is quite another to interpret a penal statute so as to impose a heavier rather than a lighter sentence on a defendant. In the latter case the constitutional dimension of due process comes into play which has no role in the former proceeding. In that regard, language in Justice Schreiber's dissenting

---

[1]The same conclusion would have been reached had the forgery been considered a fourth degree offense.

opinion in *In re DeMarco Suspension,* 83 *N.J.* 25 (1980), is apposite:

> When interpreting statutory language, courts must remain cognizant at all times of the principle that a criminal offense does not exist without an explicit law. This derives from the classic thought, *nullum crimen sine lege* [emphasis in the original] which is intrinsic in most enlightened legal systems. A criminal code prescribes the behavior pattern for individuals. What a person may or may not do should not depend on reflections and considerations not explicitly set forth in the code. An explicit law is one that is not susceptible to several reasonable interpretations.
>
> These concepts have spawned some well known doctrines. Penal statutes should be strictly construed. *See State v. Carbone,* 38 *N.J.* 19, 24 (1962); *State v. Meinken,* 10 *N.J.* 348, 352 (1952). Crimes and their sanctions must be defined with appropriate definiteness. *See State v. Fair Lawn Service Center, Inc.,* 20 *N.J.* 468, 472 (1956). Terms of a statute should not be extended by implication or intendment. *State v. Brenner,* 132 *N.J.L.* 607, 611 (E. & A. 1945). Where more than one reasonable interpretation may be made, construction should be drawn against the State. "[I]n case of doubt concerning the severity of the penalty prescribed by a statute construction will favor a milder penalty over a harsher one." 3 *Sutherland, Statutory Construction,* § 59.03 at 7 (4 ed. Sands 1974). Failure to give a person of ordinary intelligence fair notice that his conduct is forbidden by statute and punishable by certain penalties transgressed procedural due process. *State v. Smith,* 46 *N.J.* 510, 518–519 (1966); Annotation, "Indefiniteness of language as affecting validity of criminal legislation or judicial definition of common-law crimes." 16 *L.Ed.2d* 1231 (1967). [at 40]

In *DeMarco* a doctor had had his medical license revoked for causing 92 cases of hepatitis. The penalty statute involved was ambiguous as to whether a $200 penalty should be imposed on each case or on the overall conduct. The majority of the court opted for $200 a case. It stated the law in this fashion:

> The rule that penal statutes are to be strictly construed has as its heart the requirement of due process. No one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law. It does not invariably follow, however, that every time someone can create an argument as to the meaning of a penal sanction, the statute is impermissibly vague, or that the lowest penalty arguably applicable must be imposed. Numerous cases have rejected this approach. (citing cases)
>
> The question ultimately is one of fairness, given the statute and its provisions, and given the situation of the defendant. Should he have understood that his conduct was proscribed, should he have understood that the penalty about to be imposed was the sanction intended by the Legislature? The test is whether the statute gives a person of ordinary intelligence fair notice that his conduct is forbidden and punishable by certain penalties. [at 36]

The majority concluded that a physician of ordinary intelligence would have understood that when he engaged in life-threatening gross malpractice he incurred the risk of a separate penalty for each such act. In reaching that conclusion it is clear that the majority was relying on the higher-than-ordinary intelligence level of a physician and the fact that a monetary penalty was the only punishment involved.

If a person of average intelligence were to read *N.J.S.A.* 2C:21–1(b) and try to determine whether he faced a five year or 18-month period of incarceration for forging a check, he would have to conclude that the third degree definitions do not apply to his act but that it would be "otherwise" type conduct and a fourth degree offense.

I hold, therefore, that in forging a check or other like instrument an accused commits a fourth degree offense. Defendant Ott will be sentenced accordingly.