UNITED STATES of America, Plaintiff,

v.

James Earl LANDERS, Defendant.

UNITED STATES of America, Plaintiff,

v.

Jaime Valencia LIEVANO, Defendant.

UNITED STATES of America, Plaintiff,

v.

Orlando Lenny DeLAURO, Defendant.

UNITED STATES of America, Plaintiff,

v.

Eddie Lee MAXWELL, Defendant.

UNITED STATES of America, Plaintiff,

v.

Michael BRAKEFIELD, Defendant.

CR Nos. 88–20022–TU, 88–20025–TU, 88–20025–TU, 88–20031–TU and 88–20085–TU.

United States District Court, W.D. Tennessee, W.D.

June 24, 1988.

**616**

Timothy R. DiScenza, Frederick Godwin, Asst. U.S. Attys., Memphis, Tenn., for plaintiff.

W. Otis Higgs, Jr., Memphis, Tenn., Roger O. Hooban, Knoxville, Tenn., Wilbur Ruleman, Jr., Leslie I. Ballin, Kemper B. Durand, Memphis, Tenn., for defendants.

## ORDER ON MOTIONS TO PRECLUDE APPLICATION OF SENTENCING GUIDELINES

TURNER, District Judge.

Each of the defendants in these cases, having been charged with federal crimes that occurred, or are alleged to have occurred, after November 1, 1987 when the Sentencing Guidelines established by the United States Sentencing Commission became effective, have filed a motion to preclude the application of such guidelines to their case.

The defendant James Earl Landers was convicted by a jury on March 24, 1988 of possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1).

The defendant Jaime Valencia Lievano pleaded guilty on March 18, 1988 to a charge of conspiracy under 21 U.S.C. §§ 841(a)(1) and 846.

The defendant Orlando Lenny DeLauro likewise pleaded guilty on March 29, 1988 to a charge of conspiracy under 21 U.S.C. §§ 841(a)(1) and 846.

The defendant Edward Lee Maxwell pleaded guilty on March 24, 1988 to a charge of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1).

The defendant Michael Brakefield was indicted on April 11, 1988, but has not yet been tried, on a charge of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1).

The motions of these five defendants to preclude the application of the Sentencing Guidelines were consolidated, along with other cases pending before Judge Gibbons of this court, for hearing on the issues which attack the validity of the guidelines.

## BACKGROUND

The Sentencing Guidelines, which are the target of these motions, were formulated by the United States Sentencing Commission, which is composed of seven voting members who are appointed by the President with the advice and consent of the United States Senate. At least three of its members are required by the statute which established the Commission, 28 U.S.C. § 991(a), to be federal judges. In addition,

the Attorney General or his designee and the Chairman of the United States Parole Commission sit as non-voting members. The members all sit full-time until six years after the guidelines take effect. 28 U.S.C. § 992. The federal judges are not required to resign as federal judges. The Commission members, including the three federal judges, are subject to removal from the Commission by the President "only for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a).

The Commission is established by a Congressional act known as the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837, *et seq.*, and is designated in the statute as an "independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a).

The purposes of the Commission were delineated in the statute.

1. Establish sentencing policies and practices for the Federal Criminal Justice System that:

(a) assure that the purposes of sentencing as established by Congress at 18 U.S.C. § 3553(a)[1] are met;

(b) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records and guilt as to similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors;

(c) reflect advancement in knowledge of behavior as it relates to the criminal justice process;

2. Develop means of measuring the degree to which the sentencing, penal, and correctional practices effectively meet the purposes of sentencing as established at 18 U.S.C. § 3553(a).

Many reasons undoubtedly led to the enactment of these sentencing revisions, and the establishment of the Commission, but the most clearly asserted reason was the belief that "Federal judges mete out an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances." S.Rep. No. 225, 98th Cong., 1st Sess. 38 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3221. This disparity, the Senate Report added, was "traced directly to the unfettered discretion the law confers on those judges and parole authorities responsible for imposing and implementing the sentence."

The Senate also reported that federal criminal sentencing was "based largely on an outmoded rehabilitation model." Congress dictated that the Commission was to promulgate "guidelines" for use of the sentencing courts in determining sentences, 28 U.S.C. § 994(a)(1), by establishing a sentencing range "for each category of defendant." 28 U.S.C. § 994(b)(1). The maximum of the range was required not to exceed the minimum by more than the greater of 25 percent or 6 months. 28 U.S.C. § 994(b)(2).

The guidelines were to include determinations of whether to impose imprisonment, probation or a fine, as well as the length of imprisonment or probation and the amount of the fine and whether sentences of imprisonment were to be served concurrently or consecutively. 28 U.S.C. § 994(a)(1).

With reference to the categories of offenses for use in the guidelines, the law requires the Commission to consider many specific factors, including the grade of the offense, mitigating or aggravating factors, the harm caused, community views and public concern, deterrent effect and the current incidence of the offense.

In establishing categories of defendants, again many factors were directed to be considered by the Commission for use in the guidelines, if they have relevance to an appropriate sentence; some of these

---

**1.** 18 U.S.C. § 3553(a)(2) sets forth Congress' determination of the four purposes of sentencing. The sentence should (a) reflect the seriousness of the offense, (b) afford adequate deterrence to criminal conduct, (c) protect the public from defendant's further crimes, and (d) provide defendant with necessary training, care and treatment.

factors were age, education, physical and mental condition, employment records, role in the offense, criminal history and the defendant's dependence on crime for a living.

The Commission, in promulgating the guidelines, was required to consider the nature and capacity of the correctional facilities, 28 U.S.C. § 994(g); multiple offenses, 28 U.S.C. § 994(1); the violence of the crime, 28 U.S.C. § 994(h)(1)(A); and that "in many cases, current sentences do not accurately reflect the seriousness of the offense," 28 U.S.C. § 994(m). Many other factors were designated for consideration by the Commission and many duties beyond the initial promulgation of guidelines were placed on the Commission.

The Commission promulgated the guidelines on April 13, 1987; these have since been amended on December 15, 1987, January 5, 1988 and June 15, 1988.

> Offenses were grouped into 43 base levels, according to relative severity. Recommended sentences for each base level were figured, after a review of past sentencing practices. Consideration of certain aggravating and mitigating circumstances was allowed in order to take into account the gravity of a specific crime. The Commission also categorized offenders into six groups on the basis of their criminal history. The Commission then plotted the coordinates for offenses and offenders and produced a grid which sets out the sentencing ranges. The Commission estimated that the guidelines as originally promulgated would apply to ninety percent of all cases in the federal courts.

*United States v. Ruiz–Villaneuva,* 680 F.Supp. 1411 (S.D.Cal.1988).

After the passage of a statutory six-month waiting period, designed to allow Congress to reject the guidelines if it so desired, the guidelines took effect.

18 U.S.C. § 3553(b) provides that:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4)[2] unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration in formulating the guidelines and that should result in a sentence different from that prescribed.

Under 18 U.S.C. § 3742, both the government and the defendant may appeal from an "incorrect application of the sentencing guidelines."

Thus it is clear that the guidelines, being mandatory, are not guidelines at all, as is conceded by the government in its brief filed May 10, 1988.

The various defendants present several arguments as to why the guidelines violate constitutional restrictions:

1. The Congressional delegation of this function (the establishment of binding sentence ranges), which is said here to be a legislative function, was improperly made to the Commission because (a) this is a core function which cannot be delegated; and (b) even if this function could be delegated by Congress, the parameters for action of the Commission are too vague because they are not set by "intelligible principle";

2. The implementing act, it is contended, violates the doctrine of separation of powers in the following respects: (a) it impermissibly places a legislative or executive function in the judicial branch of the government; (b) it impermissibly requires the judiciary to perform non-Article III (non-judicial) functions and, in doing so, impairs the ability of the judiciary to perform its constitutional tasks; and (c) it gives the executive branch of government impermissible powers of removal over Article III federal judges;

3. Constitutional requirements of due process are violated in refusing to permit the defendants input into the assessment of sentencing factors.

It is also argued by some of the defendants that the guidelines violate the enabling legislation and are therefore invalid.

**2.** Subsection (a)(4) refers to the kind of sentence and range set out in the Commission's guidelines.

Defendants Lievano and DeLauro also assert that certain plea agreement conversations with the U.S. Attorney's office in their individual cases preclude application of the guidelines. That issue is severed for disposition by separate order of this court.

## THE CONSTITUTIONALITY OF THE DELEGATION OF THE POWER TO PROMULGATE SENTENCING GUIDELINES

In Article I, Section 1 of the Constitution, it is provided: "All legislative Powers herein granted shall be vested in a Congress of the United States which shall consist of a Senate and House of Representatives." The defendants argue that the creation of mandatory sentencing in prescribing a range of penalties for federal crimes is a "basic, core legislative function," involving the fundamental interest of liberty, that cannot be delegated by Congress. Very little authority, however, has been cited to suggest that Congress, in this world of overwhelming information resources and high technologies, cannot choose to enact legislation that takes on the assistance of bodies better able to deal in time and effort with the formulation of the details necessary to fill out the policy adopted in proper legislative form and no legal authority actually dictates the recognition of so-called "core" legislative functions.

The underlying theme of the argument is that the function of setting sentence ranges is so central to the legislative function that Congress cannot abdicate its direct involvement in the creation of those ranges which abdication would give over the legislative power to unelected persons unaccountable to the electorate.

This court notes that the Supreme Court has approved the delegation of the power to determine what conduct actually constitutes a federal crime. *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). The power to schedule drugs and thereby make criminal the handling of certain drugs has itself been delegated and this delegation approved. *United States v. Gordon*, 580 F.2d 827 (5th Cir.1978), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).

This court is of the opinion that the determination of what constitutes a federal crime, based on drug scheduling, is every bit as central to the legislative function, or a part of the legislative core, as is the fixing of sentencing ranges and is led to the conclusion that the core function argument must be rejected. "A constitutional power implies a power of delegation of authority under it sufficient to effect its purposes." *Lichter v. United States*, 334 U.S. 742, 778–79, 68 S.Ct. 1294, 1313, 92 L.Ed. 1694 (1948).

It is true that delegated functions have on limited occasions been deemed unconstitutional but there the question dealt with whether the Congress had established sufficient guiding standards for the delegate and thus conformed to its essential legislative function of setting policy.

The Congress manifestly is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility.

*Panama Refining Co. v. Ryan*, 293 U.S. 388, 421, 55 S.Ct. 241, 248–49, 79 L.Ed. 446 (1934).

It has even been noted: "Thus, in every case in which the question has been raised, the Court has recognized that there are limits of delegation which there is no con-

stitutional authority to transcend." *Id.* at 430, 55 S.Ct. at 252.

In that case, the Congress had failed to declare policy, had not established a standard and had laid down no rule to guide the delegate.

That constitutional barrier is thus one which precludes the delegation of functions that are recognized as essential because the Congress has failed to declare policy or to establish standards for the delegate's exercise of its function.

The Supreme Court has established that the policy's or standard's requirement is met when the delegated powers are confined by a Congressionally established "intelligible principle." "If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative action is not a forbidden delegation of legislative power." *National Cable Television Association, Inc. v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974).

The defendants contend here that the Congress has failed to establish the necessary framework for the Sentencing Commission's exercise of the delegated power.

Expansive delegations of power have been validated. See, for example, *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), where it was noted that "[O]nly if ... there is an absence of standards ..., so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would. we be justified in overriding its choice of means for effecting its declared purpose." *Id.* at 426, 64 S.Ct. at 668.

This court believes that the necessary minimum standards have clearly been set forth by the Congress. In addition to the full exposition by law of Congress' purposes discussed earlier, Congress has delineated at 18 U.S.C. § 3553 the considerations it legislates for the sentencing process. Policies are set forth by Congress in its statement of purposes for establishing the guidelines. 28 U.S.C. § 991(b). The Commission is told with some detail what to do and what considerations shall govern. 28 U.S.C. § 994. Many matters such as crimes of violence, repeat offenders, etc. of specific concern to Congress are addressed in the setting of Commission parameters.

One reading of the relevant portions of the Act compels the conclusion that Congress has defined the delegated function by "intelligible principle" and sufficient standards for action. This court holds that the delegation of functions to the Sentencing Commission is not constitutionally deficient.

## SEPARATION OF POWERS

Three distinct arguments are advanced to show that the doctrine of separation of powers is violated by the underlying act which establishes the United States Sentencing Commission, thus, the defendants contend, establishing the constitutional infirmity not only of the statute itself, but also the product of the Commission's work pursuant to its statutory assignment.

The defendants contend that the three branches of federal government, the legislative body, the executive body and the judicial body, are impermissibly intermeshed in that: (1) the function of fixing prospective penalty or sentence ranges is not a judicial function, yet the Sentencing Commission is designated by Congressional act as a part of the judicial branch; (2) the duty of formulating sentencing guidelines, which is not a judicial function, or in aid thereof, cannot be assigned to the three federal judges who sit as Commissioners on the Sentencing Commission because their appointment and work as Commissioners impair the judicial function; and (3) the executive branch of the government has been given impermissible power to interfere with the function of the judicial branch by virtue of the President's authority under the enabling legislation to remove Commission members from the Commission.

The doctrine of the separation of powers of the three branches of federal government is not set out in our Constitution; it is, however, of long standing constitutional

recognition, having been implied from the Constitution's allocation of powers among the three branches of government in a fashion that separates the functions and powers of each branch.

The purpose underlying the doctrine was to avoid the fearful combination of governmental powers in one person or group. Thus, the Congress enacts the laws, the President and the executive branch execute those laws and the judiciary interpret and apply those laws to specific cases; but, in general, none of the branches is permitted to do the work of the other.

By separating or spreading the functions, and therefore the powers of government, the Constitution was used to protect individuals against unbridled government force as a single entity easily guided to tyranny.

Concentration of these powers of legislation, execution and judgment could lead to tyranny because "[W]ere the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for *the judge* would then be *the legislator.* Were it joined with the executive power, *the judge* might behave in all the violence of *an oppressor."* *The Federalist No. 47,* at 303 (J. Madison).

Separating these powers in accord with the doctrine requires separation of the personnel of the three arms of government so that none might interfere with the functioning of the other. "[A]irtight departments of government" have not, however, been mandated by virtue of the doctrine of separation of powers, *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), but "[O]f the three branches it is the role of the judiciary that the Constitution most clearly and tightly confines within narrow borders." *In re Sealed Case,* 838 F.2d 476, 516 (D.C.Cir.1988).

"This careful delineation of the Judicial Branch's appropriate role serves both to guard against the danger of judicial tyranny feared by Madison and to preserve the courts as a neutral forum for the resolution of disputes." *Id.* at 516.

Judicial powers are limited to "interpreting and applying [laws] in cases properly brought before the courts." *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). Article III of the Constitution limits the power of the federal judiciary to the resolution of cases and controversies; enactment of laws or substantive rules for future application in all cases is a legislative function; the execution of those laws is an executive function. The portion of the public law which establishes the Sentencing Commission provides in part: "There is established as an independent commission in the judicial branch of the United States a United States Sentencing Commission...." 28 U.S.C. § 991(a).

The Sentencing Commission's assigned task of creating the Sentencing Guidelines is not one of deciding cases or controversies [3] nor one which can be said to involve procedural or administrative aids to the judicial system.[4]

The task is one of promulgating narrow ranges of sentences determined by applicable facts in accordance with the policies set by the legislative act; in many ways, the function has attributes of an executive function; in other ways, it appears to be the exercise of a legislative function;[5] but in no case does the function fall within the judicial branch's constitutional assignment to decide cases and controversies.

The limitation of the judicial function to cases and controversies preserves the separation of powers by precluding judicial en-

---

**3.** One task assigned to the Commission in 28 U.S.C. § 994(s) of reviewing petitions for modifications of the guidelines is arguably quasi-judicial.

**4.** The mandatory nature of the guidelines clearly gives them substantive effect.

**5.** "Defining crimes and fixing penalties are legislative not judicial functions." *United States v. Evans,* 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948). It is true, of course, that the exercise of sentencing discretion in individual cases is a judicial function, but it is the function of the Article III judge who must decide the case before him.

croachment into the functions of the legislature and executive.

Aside from the creation of substantive guidelines, the Commission is also charged with issuing policy statements for plea bargains and recommending legislation. These functions clearly do not fall within the narrow parameters of the judicial function.

Since the Commission's functions are not within the purview of judicial duties and powers, its location by statute in the judicial branch violates the doctrine of separation of powers.

The government, however, argues that despite this unconstitutional assignment to the judicial branch, the problem may be cured by severing the language in the Act which designates the Commission as an "independent commission in the judicial branch," thus preserving the constitutionality of the balance of the Act.

In the proper case, unconstitutional statutory language may be stricken from the statute in order to preserve its validity. The guiding inquiry when considering this severability question is "whether the statute will function in a *manner* consistent with the intent of Congress ..." once the language is deleted. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1481, 94 L.Ed.2d 661 (1987). As a general rule, "a court should refrain from invalidating more of [a] statute than is necessary...." *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 3268, 82 L.Ed.2d 487 (1984).

This court believes that Congress did in fact desire judicial participation on the Commission but that its clear overwhelming expressed intent was to reform sentencing practices. The court, therefore, holds that the Commission is improperly designated as a judicial agency under the doctrine of separation of powers, but that this designation may be severed from the statute and still allow the statute to function as intended by Congress.

## JUDICIAL MEMBERSHIP ON THE COMMISSION

Defendants likewise contend that the doctrine of separation of powers is violated because the Commission, a non-judicial body, has three federal judges serving as Commissioners, as indeed is required by the statute establishing the Commission. 28 U.S.C. § 991(a). It is said that this is an unconstitutional use of Article III judges because the Act requires that they exercise powers which are not assigned to nor a part of the judicial branch functions.

The court has already indicated that it believes the Commission's functions to exceed the powers of the federal judiciary as a branch of government.

But, may Congress require by law that legislative or executive functions be guided by voting input of some number of Article III judges? In one case, it was long ago noted: "Neither the legislative nor executive branches can constitutionally assign to the judicial any duties, but such as are properly judicial, and to be performed in a judicial manner." *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n. (a), 1 L.Ed. 436 (1792).

The government contends that the members of the Commission who are judges sit, not as judges, but as individuals who have voluntarily undertaken the Commission membership.

The defendants argue that the service of these three judges cannot be declared "voluntary" since the inclusion of three federal judges, if not these particular individuals, is required by statute.

Few decisions speak to the constitutionality of extrajudicial service on governmental commissions. Two recent decisions, *Application of President's Com'n. on Organized Crime (Scaduto)*, 763 F.2d 1191 (11th Cir.1985) and *Matter of President's Com'n. on Organized Crime*, 783 F.2d 370 (3d Cir.1986), reach contrary results as to judicial service on government commissions. However, both courts applied the same test—that is, the impairment of function test set forth in *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) under which the court must determine first whether the branch action required has the potential to avert that branch's accomplish-

ment of its constitutional duties. If so, the court must determine whether the "impact is justified by the overriding need to promote objectives within the constitutional authority of Congress." *Id.* at 443, 97 S.Ct. at 2790.

The functional impact asserted by the defendants and seen by many district judges in requiring that three federal judges sit as Commissioners on a full-time basis is twofold: (1) the Article III judges who serve as Commissioners cannot perform their Article III duties as judges because of the full-time requirement placed on the Commissioners; and (2) the role of these three judges as Commissioners will require their recusal on issues involving the validity of the guidelines.

■ While this court does not believe that any certain Article III judges may be required by Congress constitutionally to perform non-judicial functions, the law does not require that certain judges serve; moreover, the Constitution does not require that in no case may any federal judge involve himself in the non–Article III functions.

As to the quantitative impairment that results from the temporary full-time loss from the bench of three members of the federal judiciary, the court is not convinced that such quantitative impairment has the potential to "prevent the [judicial] Branch from accomplishing its constitutionally assigned functions." *Id.* at 443, 97 S.Ct. at 2790. The loss of the time of three judges simply does not rise to that level of devastation.

Defendants also assert that those judges who sit as Commissioners will have to recuse themselves on issues of the validity of the guidelines if they are to maintain the necessary appearances of impartiality. Such may be the case, although that issue will undoubtedly be definitely resolved in most part in the very near future and the number of recusals required of the three judicial members of the Commission will soon effectively shrink to an unnoticeable quantity.

Many courts have foreseen a reluctance on the part of non–Commissioner judges to set aside the work of their judicial colleagues. The record to date on the very issue of the validity of the guidelines belies this fear.

## REMOVAL POWERS OF THE PRESIDENT

The final argument based on the doctrine of separation of powers advanced by the defendants is that the power of the President to remove Commissioners "only for neglect of duty or malfeasance in office or for other good cause shown," 28 U.S.C. § 991(a), constitutes impermissible control of the executive over the judiciary.

■ The Act, of course, does not permit the President to remove the Commissioners from their duties as Article III judges; it simply allows their removal as Commissioners. There are no constitutional rights which protect judges in their performance of non-judicial tasks. Moreover, this court has already noted that it does not conclude that the Commission is assigned judicial functions.

Undoubtedly the power of removal contributes to the power to control, *In re Sealed Case,* 838 F.2d 476, 497 (D.C.Cir. 1988), but this court cannot draw the conclusion that the President's power to remove from the Commission a Commissioner who is also a federal judge gives unconstitutional power to the executive over that judicial office.

## DUE PROCESS

Finally, defendants argue that the Due Process clause is violated by use of the guidelines because the defendant's right to present evidence and to challenge the basis of the sentence is not protected. It is contended that since the judge cannot adjust the total offense levels mandated after fact-finding by the guidelines, the defendant is deprived of due process. Undoubtedly the determination of the relevance of proven facts plays a significant role in the sentencing process and some courts have held that the placement of this evaluative function in the Commission effectively de-

nies due process. *United States v. Frank*, 682 F.Supp. 815 (W.D.Pa. Mar. 30, 1988).

It is fairly established that a defendant must be given the opportunity to rebut information relied upon by a judge in imposing sentence. *Collins v. Buchkoe*, 493 F.2d 343 (6th Cir.1974). The guidelines do not preclude a defendant from rebutting information that will be used in sentencing him. In fact, disclosure of the presentence report is required and opportunities to contest the presentence report determinations are mandated by the guidelines. *Sentencing Guidelines*, § 6A1.3.

The guidelines do, however, severely restrict the judge's discretion to weigh the facts once found in determining an appropriate sentence. Indeed, this court accepts it as clear that such restriction on judicial discretion was a part of Congress' intent in providing for the promulgation of the guidelines. Congress has created certain statutory factors that affect a defendant's sentence.

It has long been settled that Congress has the authority to ordain punishment for federal crimes. *See, e.g., United States v. Wiltberger*, 18 U.S. (5 Wheat) 76, 95, 5 L.Ed. 37 (1820). "In the early days of the Republic ... the period of incarceration was generally prescribed with specificity by the legislature. Each crime had its defined punishment." *United States v. Grayson*, 438 U.S. 41, 45, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978). That system later gave way to the Congressional authorization of the use of judicial discretion in most instances to select a sentence within a range set by Congress.

It has been held that: "[C]ircumscribing the judiciary's authority as to what length of imprisonment may be imposed has been found to be proper invasion of that branch's authority." *Geraghty v. United States Parole Com'n.*, 719 F.2d 1199, 1211 (3rd Cir.1983).

Likewise, no authority dictates that Congress cannot determine that certain factors involved in a crime or concerning a defendant may not be given predetermined weight. Due process no more affords a defendant the right to contest Congress' evaluation of certain crime related factors, than it does to contest Congress' evaluation of the need for a specific sentence for certain crimes. *See, e.g.,* 18 U.S.C. § 924(c)(2).

■ The court concludes that the defendant's due process rights are not violated by the statutory requirement that certain sentencing factors be given predetermined weight as set by the Sentencing Guidelines.

## STATUTORY INFIRMITIES

The defendants assert also that the guidelines are inconsistent with the mandates of the statutory authority under which they have been promulgated and that the court should therefore decline to use these guidelines. Although there is a significant issue as to the standing of these defendants to assert this issue, the court has considered the questions of inconsistency and finds them unconvincing and will therefore confine its exercise of sentencing authority to the dictates of the guidelines.

The guidelines became effective with the unspoken consent of the Congress, having reserved unto itself the opportunity to reject the guidelines before they became effective. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 235(a)(1)(B)(ii), 98 Stat. 2031–32. Had they not met the statutory mandates, the court believes the Congress would itself have undertaken that issue.

## CONCLUSION

For the reasons herein stated and in light of the admonition of Justice Oliver Wendell Holmes, when he said:

I suppose that we all agree that to [declare an Act of Congress unconstitutional] ... is the gravest and most delicate duty that this Court is called on to perform. Upon this among other considerations the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act. Even to avoid a serious doubt the rule is the same.

*Blodgett v. Holden,* 275 U.S. 142, 148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1927), this court is of the opinion that the Sentencing Guidelines and the underlying statute are not invalid on the grounds asserted. The Motions to preclude application of the guidelines are therefore denied.