# United States Court of Appeals
## For the First Circuit

Nos. 14-2335
     14-2337

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER B. WRIGHT,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Robert C. Andrews, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with
whom Thomas E. Delahanty II, United States Attorney, was on brief,
for appellee.

January 27, 2016

**LYNCH**, **Circuit Judge**.  This case concerns the reading of a federal sentencing statute, 18 U.S.C. § 3559(a), in the context of revocation of a federally supervised release imposed after a criminal contempt conviction.  We conclude that the criminal contempt here must as a matter of statutory construction be treated as a Class A felony under 18 U.S.C. § 3559(a).  We therefore respectfully disagree with the Ninth and Eleventh Circuits.

Christopher Wright appeals from an order that revoked his supervised release on underlying convictions of being a felon in possession of a firearm and criminal contempt, and imposed a sentence of thirty months of imprisonment.  The district court found, inter alia, that Wright violated the terms of his release by breaking state law.  In sentencing, the court classified criminal contempt as a Class A felony, which carries a maximum five-year (sixty-month) term of imprisonment.  See 18 U.S.C. § 3583(e)(3).  Wright received a sentence of thirty months of imprisonment.

Wright raises two issues: first, he challenges the court's determination that he violated state law and, second, he argues that his maximum imprisonment exposure was two years, on the theory that criminal contempt is a Class C felony under 18 U.S.C. § 3559(a).  We affirm the decision and sentence.

I.

On review of an appeal of revocation of supervised release, "we consider the evidence in the light most favorable to the government," and "we recognize the district court's broad legal power to determine witness credibility." See United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993).

In 2007, Christopher Wright pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and criminal contempt, 18 U.S.C. § 401(3), and was sentenced to concurrent terms of eighty months of imprisonment on each offense; three and five years of supervised release on the charges, respectively, to be served concurrently; and a $200 fine. One condition of his release was that he "not commit another federal, state, or local crime." Another was that he not use a controlled substance. In 2012, only a few months after his supervised release started, Wright was arrested for theft; he admitted to violating the terms of his release and was sentenced to twelve months and a day of imprisonment, with twenty-three months of supervised release for the firearms conviction and twenty-four months for the criminal contempt conviction.

Once out on release for a second time, Wright used drugs and engaged in conduct leading to his arrest.[1] On July 20, 2014,

---

[1] Wright tested positive for drug use on June 26, July 9, July 24, and September 3, 2014. In its September 12, 2014,

Wright contacted Jonathan Trayes to pay for hallucinogenic mushrooms. Later that day, Justin Corsaro drove Wright in Corsaro's pickup truck to Trayes's house where several people, including Trayes's acquaintance, Harry Fay, were present. Fay testified that he watched from his truck as Trayes approached the passenger side of Corsaro's vehicle and began speaking with Wright. After a brief conversation, Wright grabbed Trayes by the arm through the window and told the driver to "go, go, go." Fay and Trayes testified that as the vehicle accelerated forward, Wright dragged Trayes along for at least fifty feet, dangling outside the window, as Wright punched Trayes in the head. While the car was in motion, Wright released Trayes, whose leg was then run over by the vehicle. Trayes was later taken to the hospital for medical care, including for a wound to his ankle, road-rash, internal bleeding, and a sprained or broken wrist.

As a result of this incident, Wright was arrested on September 11, 2014, and charged with aggravated assault under Maine law. Maine defines aggravated assault, in relevant part, as follows:

> 1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
>
> A. Serious bodily injury to another; or

petition for revocation, the government charged Wright with a violation of release based on drug use, which Wright admitted. Wright does not appeal this basis for revocation.

- 4 -

> B. Bodily injury to another with use of a dangerous weapon; or
>
> C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life.
> . . .

Me. Rev. Stat. Ann. tit. 17-A, § 208 (2014).

After Wright's arrest, the government filed petitions to revoke his supervised release on two grounds: use of narcotics and violation of state law. Wright challenged only the latter charge. At the ensuing proceedings, Trayes and Fay testified, and afterward the parties submitted additional briefing. On December 16, 2014, the court heard additional arguments and then ordered revocation, finding that Wright had violated two prongs of the Maine aggravated assault statute, as he "recklessly used a dangerous weapon, [Corsaro's] car," and manifested "extreme indifference to human life." Turning to sentencing, the court found that Wright's underlying criminal contempt conviction was a Class A felony under 18 U.S.C. § 3559(a), which carries a maximum revocation imprisonment sentence of five years, according to 18 U.S.C. § 3583(e)(3). The court considered the relevant sentencing factors and then sentenced Wright to below the five-year maximum, sentencing him to thirty months of imprisonment. This appeal followed.

We review the district court's ultimate decision to revoke supervised release for abuse of discretion, and the underlying finding of a violation of supervised release for clear error. United States v. Oquendo-Rivera, 586 F.3d 63, 66–67 (1st Cir. 2009); United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996). We review the revocation sentence the court imposes for abuse of discretion, see United States v. Butler-Acevedo, 656 F.3d 97, 99 (1st Cir. 2011), though our review of legal questions is plenary, United States v. O'Neil, 11 F.3d 292, 294 (1st Cir. 1993).

A.    Aggravated Assault under Maine Law

Under 18 U.S.C. § 3583(e)(3), a court may revoke a term of supervised release if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Wright challenges the court's finding that he violated the term of his release that prohibits commission of a state crime. He argues that he did not commit aggravated assault under Maine law. We agree with the district court that Wright's conduct during the July 20, 2014, incident constituted aggravated assault under § 208(1)(B), the "use of a dangerous weapon" prong of the Maine statute. See Me. Rev. Stat. Ann. tit. 17-A, § 208(1) (2014). As a result, we need not reach whether his conduct also qualifies under the "extreme indifference" prong, id. § 208(1)(C).

Under applicable Maine law, criminal liability for aggravated assault attaches when a person "recklessly" causes bodily injury with "a dangerous weapon." Id. § 208(1)(B). Maine courts have recognized that a vehicle can qualify as a dangerous weapon if the vehicle is "used . . . in a manner capable of producing death or serious bodily injury." State v. Pierre, 649 A.2d 333, 334 (Me. 1994); see State v. York, 899 A.2d 780, 783 (Me. 2006); Pierre, 649 A.2d at 334–35 & 334 n.3 (discussing Me. Rev. Stat. Ann. tit. 17-A, § 2(9)(A), defining "use of a dangerous weapon").

Wright asserts that "the circumstances in this case do not allow finding that the truck was used as a dangerous weapon," as "[n]ot every instance of driving away causes the motor vehicle to be defined as a weapon under Maine law." Even were that so in other situations, it is not true here. Here, Wright grabbed a man through the passenger-side window of a vehicle and instructed the driver to "go, go, go," leaving the man dangling as the vehicle sped forward, before the man was released and run over by the vehicle. While the victim, Trayes, survived without life-threatening injuries, Wright's use of the vehicle was certainly "in a manner capable of producing death or serious bodily injury." Pierre, 649 A.2d at 334. Wright has not even attempted to explain

how the facts could otherwise be viewed.[2]  There was no error in the district court's determination that Wright violated the term of his release proscribing a violation of state law.

B.   Classification of Criminal Contempt

As a result of his violations of supervised release, Wright was sentenced to thirty months of imprisonment.[3]  Wright contends that his underlying conviction for criminal contempt should be classified as a Class C felony, not a Class A felony,

---

[2]   Wright does argue, albeit obliquely, that "[d]riving away, under the circumstances here," does not support a finding of the mens rea of "recklessness" because it "does not create the probable result of death or serious bodily injury as the possible outcome."  This is a misstatement of law.  Maine law provides that "[a] person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result."  Me. Rev. Stat. Ann. tit. 17-A, § 35(3)(A); see Stein v. Me. Crim. Justice Acad., 95 A.3d 612, 618 (Me. 2014).  The "disregard of the risk," "must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."  Me. Rev. Stat. Ann. tit. 17-A, § 35(3)(C).  The record provides more than enough evidence to support the district court's finding that Wright was subjectively aware of the risk of bodily injury that he was causing to Trayes -- by holding him through the passenger-side window and telling the driver to go -- and that Trayes acted in disregard of the risk.  See Stein, 95 A.3d at 619.

[3]   Wright conceded a violation for use of narcotics and has not raised a challenge to that violation.  He also has not challenged the classification of the felon-in-possession conviction.  While it is true that the revocation sentence does not specify an associated release violation, or delineate between the contempt conviction and the firearms conviction in sentencing Wright to a thirty-month imprisonment term, because we find that criminal contempt is a Class A felony, and the sentence imposed fell below the maximum for the criminal contempt conviction alone, we need not address the narcotics violation or firearms conviction separately.

and that he was incorrectly exposed to a maximum prison term of five years.  In fact, he was sentenced to less than that maximum prison term.  His argument is that, nonetheless, his maximum exposure was to no more than two years, and his actual sentence of thirty months, or two and a half years, was more than that.

In revocation sentencing, after considering the applicable 18 U.S.C. § 3553(a) factors, the court may revoke a term of supervised release and "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release."  18 U.S.C. § 3583(e)(3).  However, maximum imprisonment exposure is limited as follows:

> [A] defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.

Id.  Crimes are classified for purposes of § 3583 pursuant to 18 U.S.C. § 3559(a):

> An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is--
>
> (1) life imprisonment, or if the maximum penalty is death, as a Class A felony;

- 9 -

(2) twenty-five years or more, as a Class B felony;

(3) less than twenty-five years but ten or more years, as a Class C felony . . . .

Id. § 3559(a). Although 18 U.S.C. § 401 does not specifically classify criminal contempt, the district court determined that criminal contempt was a Class A felony.

The proper § 3559(a) classification of a criminal contempt offense is an issue of first impression in the circuit. After reviewing the text and history of the criminal contempt statute, 18 U.S.C. § 401, as well as the decisions of our sister circuits, we have concluded that there is a plain reading of the statutes at issue, and that reading binds us. We join the Seventh Circuit in holding that the statutory maximum for the offense of criminal contempt, 18 U.S.C. § 401, is life imprisonment, see United States v. Ashqar, 582 F.3d 819, 825 (7th Cir. 2009). We take a second step in reasoning and hold that criminal contempt should be classified as a Class A felony for the purposes of 18 U.S.C. § 3559(a). We explain below.

The text of the criminal contempt statute, 18 U.S.C. § 401, does not include a maximum term of imprisonment.[4] An

---

[4] In relevant part, 18 U.S.C. § 401 states, "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, as . . . (3) [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401.

abundance of case law suggests that, in such a situation, the court has wide discretion in imposing a sentence, including up to life imprisonment.  See, e.g., United States v. Ortiz-García, 665 F.3d 279, 285 (1st Cir. 2011) (joining all sister circuits in finding that the maximum penalty under 18 U.S.C. § 924(c)(1)(A), which lacks a statutory maximum, is life imprisonment).  The rationale for this reading was well stated in United States v. Turner, 389 F.3d 111 (4th Cir. 2004): "[T]he sensible rule of statutory construction [is that] the absence of a specified maximum simply means that the maximum is life imprisonment. By declining to limit the penalty, Congress gives maximum discretion to the sentencing court," id. at 120.  The Supreme Court's reading of the contempt statute's language further supports this view.  See Frank v. United States, 395 U.S. 147, 149 (1969) (explaining that, through the criminal contempt statute, Congress "has authorized courts to impose penalties but has not placed any specific limits on their discretion").  Under the plain reading of the statute, the maximum penalty for criminal contempt should therefore be life imprisonment.  Under 18 U.S.C. § 3559(a), that makes it a Class A felony.  See 18 U.S.C. § 3559(a) (providing that "[a]n offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is -- (1) life imprisonment, or if the maximum penalty is death, as a Class A felony").

- 11 -

We generally do not depart from a statute's plain language "absent either undeniable textual ambiguity, or some other extraordinary consideration, such as the prospect of yielding a patently absurd result." United States v. Fernandez, 722 F.3d 1, 10 (1st Cir. 2013) (quoting Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994)). We are aware a Ninth Circuit panel has decided that it would be "unreasonable" to conclude that Congress intended to classify all criminal contempts as Class A felonies because this would label "all contempts as serious and all contemnors as felons." United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir. 1996) (per curiam), overruled in part by United States v. Broussard, 611 F.3d 1069 (9th Cir. 2010). Under the Carpenter approach, courts were required to discern what would be the "most nearly analogous offense" to the particular contempt at issue, and then classify the contempt based on the applicable Guidelines sentencing range for the offense. Id. at 1285. The Ninth Circuit reasoned that "[t]he applicable Guidelines range [was] directly linked to the severity of the offense and provide[d] the best analogy to the classification scheme" as it "focuse[d] on the upper limit of the district judge's discretion, classifying the crime according to the maximum sentence the judge was authorized to impose rather than the sentence actually imposed." Id. After United States v. Booker, 543 U.S. 220, 245 (2005), made the Guidelines advisory, the Ninth Circuit revised Carpenter such

- 12 -

that now courts in that circuit look to the most analogous offense's statutorily defined maximum penalty as the upper limit on a judge's discretion. See Broussard, 611 F.3d at 1072.

However, we think the concerns raised by the Ninth Circuit are not enough to warrant disregarding the plain language of the classification scheme Congress set forth in 18 U.S.C. § 3559(a). The Ninth Circuit does not assert that the text of either the criminal contempt statute or § 3559(a)'s classification scheme is ambiguous. See Broussard, 611 F.3d at 1071-72 ("Because criminal contempt has no statutory maximum sentence, 18 U.S.C. § 401, under a literal reading of the classification statute, it would be a Class A felony."). Unlike the Ninth Circuit, however, we do not find that classifying criminal contempt as a Class A felony is so unreasonable as to be "patently absurd." See Fernandez, 722 F.3d at 10. Rather, in agreement with the Supreme Court, we find it not absurd for Congress to have considered the broad power of contempt "essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 796 (1987); see Ex Parte Robinson, 86 U.S. (19 Wall.) 505, 510-11 (1873).

Furthermore, we are not persuaded that Congress could not have intended to label contempt as a Class A felony because of the seriousness of the "felon" appellation. It is undoubtedly

- 13 -

true that Congress utilizes the classification under § 3559(a) in other criminal statutes. See, e.g., 18 U.S.C. § 3013(a)(2)(A) (requiring higher special assessment fees for felonies than for misdemeanors); 18 U.S.C. § 3561 ("A defendant who has been found guilty of an offense may be sentenced to a term of probation unless -- (1) the offense is a Class A or Class B felony and the defendant is an individual"). However seemingly harsh those consequences might be, it is the choice of Congress, and not the courts, to create sentencing policy. As no argument has been presented, and we find none, for why the felon appellation is "patently absurd," see Fernandez, 722 F.3d at 10, we decline to adopt the approach of the Ninth Circuit.[5] We note, as well, our holding does not reach and should not be read to suggest that classification of criminal contempt as a Class A felony for the purposes of § 3559(a) requires courts to read that classification into discrete statutory schemes. Such questions are not before us.

We are also not persuaded by the decision of the Eleventh Circuit to completely forgo classifying criminal contempt and avoid setting a maximum potential punishment. See United States

_____

[5] One judge has suggested that classifying contempt as a Class A felony raises Eighth Amendment concerns about proportionality. See United States v. Love, 449 F.3d 1154, 1158 (11th Cir. 2006) (Barkett, J., concurring). But the Eighth Amendment is concerned with proportionality of punishment imposed, not mere classification, and so we do not find this rationale to be persuasive as to the classification question before us.

- 14 -

v. Cohn, 586 F.3d 844, 845 (11th Cir. 2009) (per curiam).  In Cohn, the court rejected the Ninth Circuit's approach but reasoned that nonetheless "[u]niform classification of criminal contempt would be inconsistent with the breadth" of conduct covered by the statute.  Id. at 848.  Emphasizing that the Supreme Court has referred to criminal contempt as an offense "sui generis," and that criminal contempt is unlike other crimes classified by § 3559(a) in that contempt may be charged without indictment and may be prosecuted by appointed private attorneys, the court held that criminal contempt is a "sui generis offense" that cannot be classified under § 3559(a).  Id. at 848-49.

We disagree.  To begin, we note that the Eleventh Circuit does not suggest that under the plain reading of the contempt statute that the maximum sentence for contempt is less than life imprisonment.  And we have already rejected the breadth of conduct covered by the statute as a reason to override its plain language or that of 18 U.S.C. § 3559(a).  As such, we find no basis to conclude from the fact that the Supreme Court has referred to an offense as "sui generis" that Congress could not have intended for an offense with a maximum term of life imprisonment to be classified as a Class A felony for § 3559(a) purposes.  Congress may limit the courts' discretion when addressing criminal contempt, but so far it has not chosen to do so.  That contempt

- 15 -

may be charged and prosecuted somewhat differently from other crimes is also not reason enough to eschew Congress's scheme.

Moreover and importantly, Congress has not left the contempt power unchecked. We share the concerns about the potential for untoward and harsh sentences resulting from a Class A classification. But we think the answer comes at the next stage -- at the actual choice of the sentence, after consideration of all of the relevant sentencing factors, see 18 U.S.C. §§ 3553(a), 3583(e).[6] Here, that is exactly what occurred, as the district court reviewed the case, noted the maximum of sixty months, and issued a sentence of half that length.[7]

For these reasons, we hold that the maximum penalty for criminal contempt is life imprisonment. As such, 18 U.S.C. § 401 is classified as a Class A felony for the purposes of

---

[6] Use of and reference to the Sentencing Guidelines is itself a check on the imposition of unduly harsh sentences. In revocation, for example, 18 U.S.C. § 3583(e) directs the sentencing court to consider several factors, including the Sentencing Guidelines. See 18 U.S.C. § 3583(e) (directing courts to consider 18 U.S.C. § 3553(a)(4) and (a)(5), which refer to the kinds of sentences and sentencing ranges established by the Guidelines and any pertinent policy statement issued by the Sentencing Commission).

[7] Beyond this check, "[t]he answer to those who see in the contempt power a potential instrument of oppression lies . . . not in imposition of artificial limitations on the power," but rather, "in assurance of its careful use and supervision," including through appellate review. Green v. United States, 356 U.S. 165, 188 (1958), partially overruled on other grounds by Bloom v. Illinois, 391 U.S. 194 (1968). Congress's many instruments coupled with the power of the Constitution, provide ample oversight.

18 U.S.C. § 3559(a).  We make no law regarding other statutory schemes beyond the purview of § 3559(a).  Based upon this holding, we find that there was no error of law and the sentence was reasonable.

### III.

We affirm.