# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2020

Lyle W. Cayce
Clerk

No. 19-20643

United States of America,

*Plaintiff—Appellee*,

*versus*

Jose Leonel Bonilla-Romero, *also known as* Jose Tupapa,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-245-3

Before Owen, *Chief Judge*, and Dennis and Haynes, *Circuit Judges*.
Haynes, *Circuit Judge*:

Appellant Jose Leonel Bonilla-Romero was involved in a gang-related murder when he was seventeen years old. He was charged with and pleaded guilty to first-degree murder under 18 U.S.C. § 1111(b). While a person convicted of first-degree murder under § 1111(b) "shall be punished by death or by imprisonment for life," a defendant who was under the age of eighteen at the time of the offense, such as Bonilla-Romero, cannot be sentenced to death or mandatory life imprisonment, *see Miller v. Alabama*, 567 U.S. 460, 479 (2012) (holding mandatory life without parole unconstitutional for juveniles); *Roper v. Simmons*, 543 U.S. 551, 575 (2005) (holding the same for

the death penalty).  In order to resolve this constitutional defect, the district court severed § 1111(b)'s punishment provision for first-degree murder, determined that the statute-as-modified authorizes imprisonment "for any term of years or for life," and accordingly sentenced Bonilla-Romero to a term of imprisonment of 460 months.  For the reasons set forth below, we AFFIRM.

## I.  Background

As a teenager, Bonilla-Romero became involved with a gang.  Related to their gang involvement, Bonilla-Romero and two other gang members "killed Josael Guevara by striking him with a bat and a machete."  At the time of the murder, Bonilla-Romero was seventeen years old—a minor.

The Government filed proceedings against Bonilla-Romero under the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. §§ 5031–42.  In a "Juvenile Information" charging document, the Government alleged that Bonilla-Romero killed Guevara "with premeditation and malice aforethought . . . which would have been a crime in violation of [18 U.S.C. § 1111] if he had been an adult."  The Government moved to transfer the proceedings against Bonilla-Romero to adult criminal prosecution.  The district court granted the motion and noted, among other factors warranting transfer, that Bonilla-Romero was only three months shy of his eighteenth birthday at the time of the offense, that the alleged murder "was particularly brutal," and that Bonilla-Romero exhibited sufficient maturity to be tried as an adult.

Bonilla-Romero appealed the transfer of his case to adult proceedings.  A previous panel of this court stayed the appeal "for the limited purpose of plea proceedings."  Back at the district court, Bonilla-Romero entered into a plea agreement with the Government that included a sentence of "no more than 30 years" of imprisonment and "a term of supervised release after

imprisonment of up to five years." The district court, however, rejected the plea agreement. His plea agreement rejected, Bonilla-Romero withdrew his plea of guilty. But later, he again pleaded guilty. During the plea colloquy, the court asked Bonilla-Romero, "Have you talked with your lawyer . . . about what the maximum penalties are for the offense charged against you in the Superseding Indictment?" Bonilla-Romero answered affirmatively. The court also explained:

> Now, under Section 1111 of Title 18, which is the federal murder statute, the offense of murder in the first degree, which is charged here, carries a maximum sentence of death and a minimum sentence of life in prison.

> Because you had not quite attained the age of 18 when the crime was committed and are being tried as an adult, under the United States Constitution, you're not eligible for the death penalty or for a mandatory sentence of life imprisonment.

> Therefore, in reading the punishments prescribed for murder, in the murder statute, Section 1111(b), the Court must sever and omit those words in the punishment language. That would be unconstitutional, if applied to you, because of your age at the time of the crime. When the Court does that, the offense—the offense of murder in the first degree committed at the time—committed by one who, at the time of the murder, had not attained 18 years of age and is tried as an adult, carries with it the following punishment:

> The sentence of imprisonment for any term of years or for life; a fine not to exceed $250,000; a term of not more than five years of supervised release; and a special assessment of $100.

Bonilla-Romero then pursued his interlocutory appeal. *Sealed Appellee 1 v. Sealed Juvenile 1*, No. 15-20262, slip op. at 3 (5th Cir. Mar 9, 2018), *cert. denied*, 139 S. Ct. 1258 (2019). Another panel of this court dismissed the interlocutory appeal since sentencing had not yet occurred; in dismissing the appeal, the panel noted that Bonilla-Romero "raised an important

constitutional question that may deserve a thorough review when the appropriate time comes." *Id.* at 5.

Prior to the sentencing hearing, as part of Bonilla-Romero's presentence investigation report ("PSR"), the probation officer provided that the statutory provision allowed for "[a]ny term of years up to and including Life" and that Bonilla-Romero's guideline range—based on an offense level of 43 and criminal history category of I—was life imprisonment. The probation officer recommended that, after applying a downward variance "given the defendant's age at the time of the offense" and accounting for time served in custody, Bonilla-Romero be sentenced to 578 months' imprisonment. The Government filed a sentencing memorandum requesting that the district court "sentence Bonilla-Romero to 35 years or more of incarceration."

Bonilla-Romero objected to the PSR's determination that he was subject to a term of imprisonment up to and including life, noting that 18 U.S.C. § 1111(b) allows for first-degree murder to be punished only with mandatory life imprisonment or death but that juveniles may not receive those sentences. At the sentencing hearing, the district court explained that "[t]he question is whether there is any valid portion of Section 1111(a) [that when] applied to juveniles … would function independently, and in a manner consistent with the intent of Congress." In this case, because "the maximum penalty is authorized" by statute and no provision exists for "less than [a] life sentence," a "gap" had been "left open." The court further explained that "[i]n the absence of more specific and constitutional guidance from Congress," a statute authorizing only a maximum penalty "provid[es] discretion to the sentencing judge to sentence anywhere between no penalty, and the maximum penalty." For these reasons, the court overruled Bonilla-Romero's objection.

No. 19-20643

The district court ultimately sentenced Bonilla-Romero to 460 months of imprisonment (thirty-eight years and four months), followed by five years of supervised release.  Bonilla-Romero timely appealed the district court's judgment.

## II.   Jurisdiction and Standard of Review

The district court had jurisdiction over this case under 18 U.S.C. § 3231, and we have jurisdiction over Bonilla-Romero's timely appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).   We review constitutional challenges de novo. *United States v. Romero-Cruz*, 201 F.3d 374, 377 (5th Cir. 2000).

## III.   Discussion

On appeal, Bonilla-Romero raises two challenges to his conviction. First, he contends that the district court unconstitutionally fashioned a new punishment for first-degree murder committed by juveniles, violating the Due Process Clause's notice requirement and separation-of-powers doctrine. Second, he asserts that the district court violated the Due Process Clause and Federal Rule of Criminal Procedure 11 by failing to specify his potential sentencing range at his plea hearing.  Neither of Bonilla-Romero's challenges succeed.

### A.   Punishment Provision Challenge

18 U.S.C. § 1111(a) creates two categories of murder.  First-degree murder features an aggravating characteristic, such as being perpetrated "by poison, lying in wait, or any other kind of deliberate, malicious, and premeditated killing."   18 U.S.C. § 1111(a).   Second-degree murder encompasses all murder not in the first degree.  *Id.*  Although § 1111(b) authorizes a sentence of "imprison[ment] for any term of years or for life"

5

for second-degree murder, §1111(b) sets forth a minimum and maximum sentence prescribing that first-degree murder "be punished by death or imprisonment for life." *Id.* § 1111(b). As the Government concedes, as a result of the Court's rulings in *Miller* and *Roper*, a death sentence is not available for juveniles. A mandatory life sentence without possibility of parole is also proscribed.

The Supreme Court recently restated that when a portion of a statute is unconstitutional, "the traditional rule is that the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2209 (2020) (internal quotation marks and citation omitted). Nothing suggests that Congress would not have enacted a murder statute covering juveniles if it had foreseen the rulings in *Miller* and *Roper*. Thus, the focus here must be on the proper remedy.

We conclude that it is appropriate to sever as necessary. The question then becomes which portions of § 1111 must be excised and which must be retained. *United States v. Booker* provides the framework: "we must retain those portions of [§ 1111] that are (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute." 543 U.S. 220, 258–59 (2005) (cleaned up). At the same time, "we must refrain from invalidating more of the statute than is necessary." *Id.* at 258 (internal quotation marks and citation omitted).

*Roper* requires that we strike § 1111(b)'s authorization of the death penalty for juveniles, and *Miller* requires that we do the same for its mandatory minimum of life imprisonment. Yet we need not go further; under *Miller*, juveniles may be sentenced to life imprisonment, provided that the sentencer adequately considers the offender's youth. 567 U.S. at 479–80

No. 19-20643

(noting that "appropriate occasions for sentencing juveniles to this harshest penalty will be uncommon").

As currently drafted, § 1111(b) provides a statutory maximum of death for first-degree murder and a statutory minimum of life imprisonment without parole.[1] Under *Roper*, the death penalty must be discarded, leaving life imprisonment as both the statutory maximum and minimum. Because *Miller* in turn prohibits mandatory life without parole sentences for juveniles, all that remains of the punishment provision is a statutory maximum of life imprisonment. Where Congress only provides a statutory maximum, the district court has discretion to impose no penalty or any penalty up to that maximum. *Cf. United States v. Turner*, 389 F.3d 111, 120 (4th Cir. 2004) (holding that when Congress fails to provide a statutory maximum, it "gives maximum discretion to the sentencing court," such that "the maximum is life imprisonment"); *United States v. Wright*, 812 F.3d 27, 33 (1st Cir. 2016) (holding the same). Thus, excising the mandatory minimum nature of the life sentence is all that is needed to satisfy the constitutional issue for juveniles under § 1111.

Another way to address the issue is to substitute the punishment provision for second-degree murder in this case because, under § 1111's scheme, all of the elements of second-degree murder must be met to be convicted of first-degree murder.[2] Either approach yields the result reached

---

[1] A federal life sentence is a sentence of life imprisonment without parole because parole is no longer available in the federal system. *Richmond v. Polk*, 375 F.3d 309, 316 (4th Cir. 2004) (citing the Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, 98 Stat. 1987).

[2] First-degree murder is a murder *plus* the heightened state-of-mind element (willfulness, deliberateness, maliciousness, or premeditation). *See* 18 U.S.C. § 1111(a). Second-degree murder is any other murder. *Id.* Therefore, any offense that satisfies the

by the district court: that Bonilla-Romero shall be punished by imprisonment "for any term of years or for life."

The district court's remedy complies with *Roper* and *Miller*, functions independently, and is consistent with Congress's clear intent to criminalize "the unlawful killing of a human being with malice aforethought," 18 U.S.C. § 1111(a). Nevertheless, Bonilla-Romero contends that the district court's solution is still unconstitutional, relying on *United States v. Evans*, 333 U.S. 483 (1948), and *United States v. Under Seal*, 819 F.3d 715 (4th Cir. 2016), for the proposition that the Government cannot retroactively graft a lesser penalty onto an indicted charge.

*Evans* presented "an unusual and a difficult problem": the statute at issue criminalized both smuggling and harboring aliens, but it provided a punishment only for smuggling. 333 U.S. at 484. Because the statutory scheme resulted in doubt and ambiguity, the Supreme Court declined to apply the smuggling penalty to a harboring offense. *Id.* at 489, 495. Here, however, the statutory scheme is not ambiguous. The scheme makes clear that any killing of a human being with malice aforethought is illegal and punishable by a term of imprisonment; and if the offender's conduct was willful, deliberate, malicious, or premediated, then an increased penalty applies. *See* 18 U.S.C. § 1111. Because the offenses and corresponding punishments are clear under the statutory scheme, the instant case does not raise the "unusual" problem that was at issue in *Evans*.

In *Under Seal*, the district court denied the Government's motion to try the defendant—a juvenile accused of murder in aid of racketeering—as an adult because the racketeering statute carried a mandatory penalty of

---

elements for first degree murder necessarily satisfies those for second-degree murder as well.

either life imprisonment or death. 819 F.3d at 717. The Fourth Circuit affirmed the district court's decision because a "conviction would require the court to impose an unconstitutional sentence." *Id.* at 728. The Fourth Circuit reasoned that, under the structure of the racketeering statute, there was no punishment that could be applicable to the juvenile. *Id.* The provision at issue, 18 U.S.C. § 1959(a)(1), contained one penalty for racketeering-related *murder* (life imprisonment or death), which could not be imposed on a juvenile, and another for racketeering-related *kidnapping* (imprisonment for any term of years or life). *See id.* at 723–24. The Fourth Circuit declined to "combine the penalty provisions for two distinct criminal acts." *Id.* at 724. Therefore, "[t]he penalty enacted for the kidnapping-based offense [could not] simply be interchanged with and applied to the murder-based offense, as these . . . [have] distinct elements." *Id.* Grafting the kidnapping penalty onto a murder offense would "run[] counter to the Constitution's guarantee of due process" because the statute does not provide notice that any other penalty could be applicable for the murder. *Id.* at 726.

*Under Seal* is also distinguishable from the instant case. As discussed above, an offense that meets the elements for first-degree murder would also satisfy the elements for second-degree murder. With that aspect of the statutory scheme in mind, the statute provides notice that the conduct of murder could result in a term of imprisonment for any term of years. *See* 18 U.S.C. § 1111(b).

Bonilla-Romero also insists that the district court's solution violates the separation-of-powers doctrine because it applies the penalty Congress intended for second-degree murder to first-degree murder. Yet by deleting any penalty for juvenile first-degree murderers, Bonilla-Romero's approach would completely frustrate the will of Congress by placing juveniles who committed the most heinous murders in a better position than those who committed second-degree murder. Thus, we conclude that Bonilla-

Romero's challenges to the district court's construction of § 1111(b)'s punishment provision fail.

### B. Plea Hearing Challenge

Bonilla-Romero also challenges the district court's supposed failure to specify his sentencing range at his plea hearing. Under the Due Process Clause and Federal Rule of Criminal Procedure 11, when a guilty plea is accepted, the court must inform the defendant of the consequences of his plea, including the maximum possible penalty and any mandatory minimum sentence. *See* FED. R. CRIM. P. 11(c)(1); *see also United States v. Pearson*, 910 F.2d 221, 222–23 (5th Cir. 1990). As long as a defendant is advised of and understands the consequences of his plea, the plea is knowing and voluntary. *Pearson*, 910 F.2d at 223.

At the plea hearing, the district court provided notice of Bonilla-Romero's sentencing considerations in detail, as set forth above. It made clear that his offense typically resulted in a penalty of mandatory life imprisonment or death but that, because of his youth at the time of the offense, Bonilla-Romero would be eligible for a "sentence of imprisonment for any term of years or for life" and "a fine not to exceed $250,000." Thus, Bonilla-Romero was informed of the maximum penalty that he faced. Moreover, no mandatory minimum applied. The transcript of Bonilla-Romero's plea hearing demonstrates that the court properly notified him of the consequences of a guilty plea and, accordingly, that Bonilla-Romero's plea was knowing and voluntary. Therefore, this challenge also fails.

Accordingly, we AFFIRM.